**J. B. McPHERSON and James W. McPherson, Appellants,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al., Appellees.**

No. 21808.

United States Court of Appeals
Fifth Circuit.
July 20, 1965.

Don Graf, Nelson, McCleskey & Harriger, Lubbock, Tex., for appellants.

Bernard P. Evans, Key, Carr & Clark, Lubbock, Tex., for appellees.

Before BROWN and GEWIN, Circuit Judges, and KILKENNY,* District Judge.

GEWIN, Circuit Judge:

This diversity case involves a controversy between insured and insurer. The appellants, J. B. McPherson and James W. McPherson, each had separate personal liability insurance policies; the former with Ocean Accident and Guaranty Corporation Ltd., and the latter with St. Paul Fire and Marine Insurance Company. The insurers sought and obtained a declaratory judgment in the United States District Court for the Northern District of Texas that they were not obligated to defend a damage suit against appellants which was then pending in the District Court of Bailey County, Texas or to indemnify them against any judgment rendered therein. The district court granted the motion of the insurers for summary judgment pursuant to F.R.Civ.P. 56.

Appellants contend that the trial court erred in granting summary judgment because there were disputed material issues of fact with respect to the following: (1) failure of the insured to give proper notice to the insurers of the lawsuit filed in the state court; (2) the question of coverage in view of a provision in the policies excluding damages intentionally caused.[1]

J. B. McPherson owned certain land which he and his son James farmed as partners. The plaintiffs in the state court damage suit, A. C. Bryant, Durwood Patterson, and Leona Patterson, owned lands which adjoined the McPherson property. The adjoining owners claimed that in the summer of 1962 the appellants cut or caused to be cut a certain dike and levee which had been in existence for a number of years to retain the overflow of water from the Double Mountain Fork of the Brazos River and direct its flow through a low lying area known as Muleshoe Draw. It is further claimed that from May 20 to June 3, 1963, appellants constructed a series of dikes, levees and ditches upon their land which diverted the natural flow of flood waters and caused such waters to flow through and upon the lands of the plaintiffs. They sought to recover permanent damages because of alleged deposits of silt and trash on their land, and temporary damages from the alleged loss of crops totaling more than $30,000. In addition, they requested a temporary injunction restraining appellants from cutting and interfering with the dike and

---

* Of the District of Oregon, sitting by designation.

1. The record does not contain either of the policies in question, but the parties agree that both policies contain substantially similar provisions:

"Coverage D—Personal Liability

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

"The Limit of Liability stated on Page 1 for Coverage D is the limit of the Company's liability for all damages, including damages for care and loss of services, as the result of any one occurrence."

Coverage does not apply:

"To bodily injury or property damage caused intentionally by or at the direction of the Insured."

The insured is obligated to give notice:

"When either a loss or occurrence takes place, written notice shall be given or (sic) on behalf of the insured to the Company or any of its authorized agents as soon as practicable.

"* * * The insured shall, if claim is made or suit is brought against the Insured, immediately forward to the Company every demand, notice, summons or other process received by him or his representative. * * *

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with."

levee and requiring them to destroy the dikes, levees and ditches which they had constructed and which resulted in diverting the water from the McPherson land to the adjoining property.

The original petition or complaint was filed in the state court on June 10, 1963. Service of process was perfected on J. B. McPherson on June 12 and on James W. McPherson on June 13. On or about June 19 the adjoining owners filed their first amended original petition, the chief purpose of which seems to have been to correct certain property descriptions. On or about September 18 they filed their second amended original petition in the state court. All three of the petitions alleged the cutting of the dike and levee in the summer of 1962 and the construction of dikes, levees and ditches from May 20 to June 3, 1963, and all three claimed compensatory damages which had allegedly resulted from the above-mentioned acts of the appellants. The second amended petition also alleged that the acts of the appellants were "wrongful and malicious" and sought exemplary

damages[2] and additional compensatory damage which occurred "during the crop year 1963." No additional acts on the part of the McPhersons are alleged in the first or second amendments. All of the acts alleged to have been committed are substantially identical in all three sets of pleadings.[3]

The appellants gave no notice to their insurers until August 6, 1963, 54 days after the original suit was filed. In their brief filed in this court the appellants do not undertake to explain their delay; they only seek to avoid possible adverse consequences because of it. Their position before the trial court was more forthright. They admitted to the trial court that the reason for the delay in giving notice was that they did not know that they had insurance coverage.[4]

The arguments advanced by the appellants as to undisputed facts both here and in the trial court are far from clear. They have repeatedly asserted that one of the amended petitions alleged new or additional acts by the McPhersons on the

2. When the first petition or complaint was filed on June 10, a fiat was issued by the presiding judge of the state court directing that a hearing be held on the request for a temporary injunction and setting a date for such hearing. The temporary injunction was granted on June 22. On August 2, James McPherson was cited for contempt based upon the representation that he had violated the injunction. The contempt hearing was held on August 13 and James W. McPherson was adjudged to be in contempt of the state court.

3. James W. McPherson actually committed the acts which provoked the state court lawsuit. However, no issue is raised as to whether such acts were committed with the approval of J. B. McPherson or in the course of the partnership business. J. B. McPherson did not deny that he authorized the actions of his son, but said he ratified them afterwards and that he was "sticking with him [James] on it."

4. The record shows the following explanation by counsel for appellants when the trial court made inquiry about the delay:
"THE COURT: Well, why all of that delay?

"MR. GRAF: Because we didn't realize that we had the insurance policy, Your Honor, was the reason. We just didn't know that we had the policy, and that we were covered."
* * * * *
"The only excuse that there is for that delay is the fact that the McPhersons did not know that this kind of claim was insured against by the policy which they had. They knew they had policies of insurance, a number of them, but they did not realize that this type of claim was covered by those policies."
* * * *
"I wish that I had a better reason to offer the Court in view of the Texas law concerning the delay in notifying the insurance carrier with respect to the original claims set forth in the original petition and the first amended original petition, but with respect to these additional damages which were asserted against the McPhersons for the first time either on September the 17th or 18th, 1963, we knew about for the first time on the following day, September the 19th, 1963.
* * * "

28th of July 1963.[5] There is no factual basis in the record for such an assertion. We are convinced that the trial court, after patient and continued interrogation of counsel, clearly understood the undisputed facts as to the dates when the acts were committed and the nature of the allegations in all three petitions in the state court. The only support for the quoted assertion is a similar misstatement by counsel for the appellants in the trial court. We do not suggest that there was an intentional misrepresentation of facts. The confusion of the appellants which persisted from the very beginning probably resulted from their interpretation of pleadings filed in the contempt proceeding. In any event, the pleadings in the contempt proceeding are not disclosed by the record; and if they were, we seriously doubt that they would have any bearing on the issues in this case.

■ The insurers filed their complaint seeking a declaratory judgment on August 21, 1963. The appellants answered on September 25, 1963. In their motion for summary judgment the insurers relied upon the depositions of both McPhersons and certified copies of the original petition and the first and second amended original petitions filed in the state court. The appellants did not controvert any of the evidence offered and filed nothing in opposition to the motion. They cannot rely on their pleadings alone to create an issue of fact. F.R.Civ.P. 56(e); Gauck v. Meleski et al. (5 Cir. 1965) 346 F.2d 433; Dressler v. M/V Sandpiper (2 Cir. 1964) 331 F.2d 130. Extensive oral argument was heard and thereafter the court entered summary judgment for the insurers. We fully agree with the action taken by the trial court and affirm its judgment. This is a typical case for the application of the summary judgment rule.

■■ The chief question is whether the McPhersons' delay in giving notice to their insurers relieves the insurers of their duty to defend the Bailey County lawsuit or indemnify the McPhersons in the event liability is imposed upon them as a result of that suit. Under the Erie doctrine, we are bound by Texas law. The Texas courts have construed "as soon as practicable" and "immediately" to mean within a reasonable time in light of the circumstances involved. A failure to give timely notice is a breach of the insurance contract and relieves the insurer of the obligations to defend or indemnify. The rule is succinctly stated in New Amsterdam Casualty Company v. Hamblen (1945) 144 Tex. 306, 190 S.W.2d 56:

"Our conclusion is that, viewing the notice requirement under its designation as a condition and in connection with the proviso, the necessary implication to be drawn therefrom is that failure to give notice of an accident or suit as soon as reasonably possible invalidates the claim for indemnity. This conclusion, we think, is well supported by authority." (Citing cases)

See also Klein v. Century Lloyds (Tex. Civ.1954), 275 S.W.2d 91, affd. 154 Tex. 160, 275 S.W.2d 95; State Farm Mutual Automobile Insurance Company v. Hinojosa (Tex.Civ.App.1961) 346 S.W.2d 914, ref'd. n. r. e.; Lane v. Anchor Casualty Company (Tex.Civ.App.1962) 355 S.W.2d 90, no writ hist.; National Surety Corp. v. Wells (5 Cir. 1961) 287 F.2d 102; Yorkshire Indemnity Co. v. Roosth & Genecov Production Co. (5 Cir. 1958) 252 F.2d 650; Appleman, Insurance Law & Practice (1962), Vol. 8, § 4734.

■ It is immaterial whether the insurance company sustained loss or damage because of the delay. The question of whether notice is reasonable is usually

---

5. In their brief in this court appellants make the following assertion:

"August 2, 1963—Bryant et al. had the McPhersons cited for contempt for violating the temporary injunction. In these pleadings, it was alleged that on July 28, 1963, James McPherson had driven a Caterpillar Tractor down the length of the dike. Because of these acts, alleged Bryant et al. damages were caused to the 1963 crops."

a question of fact, but if the facts are undisputed, the question then becomes one of law. See New Amsterdam Casualty Company v. Hamblen, supra; Klein v. Century Lloyds, supra; State Farm Mutual Automobile Insurance Company v. Hinojosa, supra; Kellum v. Pacific National Life Insurance Company (Tex. Civ.App.1962) 360 S.W.2d 538.

We are fully aware of the fact that there may be circumstances in which there is a valid distinction between the duty to defend and the duty to indemnify. See Green v. Aetna Ins. Co. (5 Cir. 1965) 349 F.2d 919, 925, in which we held that it was proper to make a declaration that the insurer was under no obligation to defend a suit under the allegations of the original petition, but that it would be inappropriate to make a declaration as to the obligation to indemnify until the facts bearing on coverage were decided in the state court.[6] However, we recognized that a failure to give timely notice in violation of policy provisions could justify a declaration of non-liability:

> "The obligation to pay such claim would, of course, depend on whether other provisions of the policy, such as notice of suit, cooperation, and the like had been complied with."

Our attention has not been called to any policy provisions in the instant case dealing with the question whether the notice required refers to the acts of the insured which result in a claim, or whether such notice has reference to the formal claim or the filing of suit. The notice provision speaks of "a loss or occurrence" and states that notice thereof shall be given "as soon as practicable." It further provides that "if claim is made or suit is brought" the insured shall "immediately forward to the company every demand, notice, summons or other process received by him." The act of cutting the dike and levee occurred more than a year before any notice was given to the insurers. In the circumstances of this case we prefer to construe the language of the policy to refer to the filing of the suit in the state court. The record fails to disclose the existence of any extenuating circumstances which would require a relaxation of the notice requirement. See National Surety Corp. v. Wells (5 Cir. 1961) 287 F.2d 102. Lack of knowledge of coverage in the circumstances here present does not constitute a valid excuse for failure to give notice. See Kellum v. Pacific National Life Insurance Company, supra. J. B. McPherson previously had been a licensed general insurance agent for 15 years and was experienced in the insurance business. James W. McPherson was of full age, was well educated, and had some experience in business.

In effect the appellants concede that their failure to give notice of the lawsuit insofar as it relates to acts committed in 1962 and damages based thereon relieves the insurers of any obligation to defend or indemnify.[7] However, they insist on full protection as to the acts and damages which were set forth in the second amended petition on the theory that these were separate "occurrences" under the terms of the policy and that notice was therefore timely as to these acts. As we indicated earlier, the amended state court pleadings do not seek damages resulting from any additional acts committed by the McPhersons in 1963. Additional damages are claimed in the *second* amended petition, but all damages claimed are based on what the Mc-

---

6. Although not a determinative factor, at oral argument counsel advised the Court that the state court litigation had been terminated and the instant case had become an "attorney's fee case now."

7. "THE COURT: * * * I don't see how the amended pleading which brought forward the additional damage claim and on which prompt notice was given the insurance company, would constitute by any process of relation back to remedy the delay in respect to the suit as it was first framed at the time of the filing.
   "MR. McCLESKEY: I don't think it would, Your Honor. I wish I could answer differently, but I don't think it would."

Phersons did in the summer of 1962 and from May 20 to June 3, 1963, as alleged in the original petition. These allegations of additional damages did not materially change the nature and scope of the lawsuit. The cause of action has remained substantially the same, in the same court, between the same parties, concerning the same lands, dike and levees, and the same acts of the appellants.

In view of our conclusion with respect to the failure to give timely notice, it is unnecessary to reach the other contentions of the appellants. The judgment is affirmed.