**ALUMINUM COMPANY OF AMERICA,**
a Pennsylvania corporation,
Plaintiff,

v.

**BURLINGTON TRUCK LINES, INC.,**
et al., Defendants.

Nos. 70 C 1191–70 C 1195,
70 C 1198–70 C 1200.

United States District Court,
N. D. Illinois, E. D.

May 3, 1972.

Pope, Ballard, Kennedy, Shepard & Fowle, Chicago, Ill., for plaintiff.

Donald Levine, Axelrod, Goodman, Steiner & Bazelon, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiff in these actions is suing the various defendant motor carriers for refund of freight charges pursuant to orders of the Interstate Commerce Commission. The plaintiff presently moves for summary judgments and, in each of these cases but one, the defendants move to dismiss the actions, or in the alternative, move for summary judgments in their favor based upon the same grounds by which they oppose the plaintiff's motions for summary judgment.[1]

The plaintiff has previously brought suit against three other motor carriers based upon the same orders of the Interstate Commerce Commission[2] and, in response to the plaintiff's motions for summary judgment in those cases, this Court ruled that the orders were valid and that the plaintiff was entitled to the refunds. Subsequent to that ruling, we denied the defendants' motions for a new trial and to alter and amend the judgments. Because the Court's memorandum opinions accompanying our rulings on those motions[3] plus the memorandum opinion granting plaintiff's motion for attorneys' fees[4] discuss much of the factual background and legal conclusions relevant to these lawsuits, we adopt and incorporate those opinions into this opinion by reference and we do not, therefore, repeat the factual background of this suit.

### I

The defendants' initial grounds for opposing the plaintiff's motions for summary judgment are the same that their counsel took in response to the plaintiff's motions for summary judgment in the three prior cases and, in support thereof, they incorporate all their briefs from the prior suits. We analyzed and considered these arguments in our prior opinions incorporated herein and, as there outlined, do not find them to be meritorious.

### II

The defendants next assert grounds for opposing plaintiff's summary judgment motions which, the carriers claim, are "supplemental" to the grounds asserted by the defendant motor carriers in the three prior cases. Considering their prior briefs in opposition to plaintiff's original summary judgment motions in the three prior cases and their "supplemental" briefs in support of their motions to vacate the adverse judgments entered therein, the new "supplemental" briefs filed in these proceedings are the third attempt by counsel for the motor carriers to conjure up theories to aid their clients to abrogate their understanding with the Commission to roll back any charges collected from shippers during the Commission proceedings and which ultimately were not approved. Because each of these cases is a separate proceedings, however, we must consider the "supplemental" grounds asserted by the defendants herein.

---

1. The defendant in case No. 70 C 1194, Interstate Motor Freight System, has not moved to dismiss the complaint or for summary judgment in its favor.

2. Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill.); Aluminum Company of America v. Brady Motorfrate, Inc., No. 70 C 1190 (N.D.Ill.); Aluminum Company of America v. Poole Transfer, Inc., No. 70 C 1197 (N.D.Ill.).

3. Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., et al., 337 F.Supp. 674 (N.D.Ill.1971).

4. Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., et al. (N.D.Ill. Nov. 30, 1971). This opinion has not been published. For a summary of its holding, see n. 31, infra.

The defendants' initial "supplemental" argument is that "the plaintiff seeks to have this Court give far greater vitality and effect to the purported 'order' of the Interstate Commerce Commission upon which plaintiff relied than was ever intended by that Commission." In support of this conclusion, the carriers submit copies of the brief of the United States and the Interstate Commerce Commission filed before the Denver three judge Court in Admiral-Merchants Motor Freight, Inc., et al. v. United States,[5] wherein the motor carriers unsucessfully sought to overturn the Commission's refund orders.

■ The carriers contend that a perusal of the ICC brief indicates that the Commission, interpreting its own order, asserted before the three judge court that (1) the refund order was based upon duties of the carriers which arose under the common law doctrine of restitution and not under the Interstate Commerce Act and (2) such order would not be enforceable per se against the carriers under the doctrine of restitution without the carriers being provided an opportunity to challenge the equities in subsequent restitution proceedings. The carriers argue that with these assertions before it, the Denver Court's ruling on the validity of the ICC order was not intended to foreclose the carriers from later again challenging that order.

We have read the briefs submitted by the Government to the Denver Court and the carriers' description of them is at least arguable although the precise meaning of a subsequent "challenge of the equities" is unclear. Had the Denver Court ruled on the basis outlined in those briefs, the carriers' theory that they should now be entitled to submit evidence on the equities in the restitution suits might be appropriate. There are, however, two reasons why their theory is inapposite and why the Commission's view of the refund order is irrelevant to these proceedings.

First, the Denver Court, in ruling for the ICC and dismissing the carriers' complaint, specifically did not rely upon the Government's proferred theory of restitution as a basis for upholding the order. After noting the Government's theory of common law restitution, the Court responded that a legislative tribunal cannot exercise common law or equitable jurisdiction unless such power has been expressly granted to it by Congress, but that this consideration was immaterial because the Commission did *not* undertake to apply common law or equity principles. Rather, it merely had imposed the refund order as a condition for granting an extension of time in the hearings on the proposed increases, a purely procedural matter which was clearly within its power. The Court continued:

An even stronger argument for refusal to annul the Commission's order is the doctrine of equitable estoppel. We have in mind the principle which imposes an obligation on a person to live up to his representations or conduct in circumstances where inequitable consequences would result to persons having the right to rely, and who in good faith did rely on the representations made. Applied to the case at bar the Commission certainly relied on the carriers' withdrawal of their jurisdictional objection to the refund condition. The Commission's reliance was evidenced by its failure to vacate the order. It did not have to anticipate that the carriers would renege. The carriers' withdrawal of their timely objection was a positive act which evidenced willingness to go along with the condition imposed.

It can also be argued that there was a binding waiver on the part of the carriers resulting from their affirmative withdrawal of their objection . . .[6]

It is clear from this lengthy quote that the Denver Court ruled on a basis wholly

5. 321 F.Supp. 353 (D.Colo.1971), aff'd, 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971).

6. Admiral-Merchants, supra n. 5, 321 F. Supp. at 359.

apart from that suggested by the Commission and that the Commission's brief before that Court discussing its restitutional theory is immaterial in these proceedings.

The second reason why the ICC briefs in Denver are immaterial in these suits is that these are not restitution proceedings. In the three prior suits before this Court, we declined to reach the restitution issue and the plaintiff does not now attempt to raise it in its current motions for summary judgment. Its motions, rather, are based upon Sections 16(2) and 205(g) of the Interstate Commerce Act, 49 U.S.C. §§ 16(2), 305 (g). The ICC's suggestion in Denver that the carriers could argue the equities in subsequent restitution suits, therefore, has no bearing on suits based upon a different jurisprudential basis.

In summary, it is apparent that the carriers' statements that the plaintiff seeks to have the Court give a greater vitality and effect to the refund order than was ever intended by the ICC is of no merit because (1) the Denver Court, whose holding was affirmed without opinion by the United States Supreme Court, rested its decision upon a basis wholly apart from the arguments submitted by the Commission and (2) these suits are *not*, in any event, restitution suits.

### III

The carriers' next two "supplemental" grounds for denying plaintiff's motions for summary judgment are that Rule 15 of the Federal Rules of Civil Procedure cannot be utilized to revive causes of action which have expired prior to the time a plaintiff seeks to assert new theories for its cause of action and that, in any event, no claim for relief has been stated on the facts alleged. As these two grounds have been thoroughly discussed in our prior opinions incorporated herein, we need not again reiterate our reasons for concluding that these arguments are not meritorious.

■ In response to the carriers' suggestion that the plaintiff fails to state a claim for relief, we would only state for the third time during the course of this litigation that, contrary to the defendants' persistent characterization, the plaintiff's cause of action is not based upon a theory of reparations,[7] but is nothing more than a very arduous attempt on its parts to compel the carriers to honor their end of the roll-back agreement which, as noted above, the Denver three-judge Court believed, as we do, the carriers are estopped from contesting. That the defendants continue to characterize the plaintiff's suits as an attempt to circumvent the burden that would be upon it in a statutory reparation proceedings, when everybody involved agrees that these are not such proceedings, can be considered as nothing more than a smoke screen to hide the plain fact that *the Supreme Court of the United States has affirmed a decision which states*

7. The statutory suit for reparations by a shipper against a motor carrier is authorized by 49 U.S.C. § 304a. In such a suit, the burden is upon the *shipper* to prove affirmatively to the Commission that the carriers' past-charged rates were unjust and unreasonable. The orders issued by the Commission which are contested herein were made in relation to a hearing ordered by the Commission pursuant to 49 U.S.C. § 316(g) to inquire into the lawfulness of the new rates. Because the carriers are required by § 316 (a) to establish only "just and reasonable" rates, the burden is upon the carriers to establish affirmatively in an inquiry into the lawfulness of the proposed rates that those rates are indeed just and reasonable. Middlewest Motor Freight Bureau v. United States, 433 F.2d 212 (8th Cir. 1970), cert. denied, 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971) ; Accelerated Transport-Pony Exp., Inc. v. United States, 227 F.Supp. 815 (D.Vt.1964), aff'd, 379 U.S. 4, 85 S.Ct. 43, 13 L.Ed.2d 21 (1964) Because the Commission proceedings involved herein were not reparation proceedings brought by shippers under § 304a but were initiated by the Commission itself under § 316(g), the only underlying finding that it made was that the *carriers* had failed to meet their burden to prove affirmatively that its rates were just and reasonable. The plaintiff has never sought reparations before the Commission or claimed that it is seeking reparations herein.

*that the carriers are estopped from contesting and have waived their right to challenge the validity of the Commission refund order.*

## IV

█ The defendants' next argument in opposition to the plaintiff's motions for summary judgment is that the plaintiff seeks to assert herein the nonevidentiary findings made in Admiral-Merchants Motor Freight, Inc., et al. v. United States, supra n. 5, the Denver case, as res judicata against defendants herein who were not parties to that proceeding. The carriers argue that the Denver Court's refusal to enjoin the order was, at most, a mere recognition of the fact that "the Colorado Court could not have enjoined the order for it was not enforceable by its own provisions." (Defendants' supplemental memorandum, pp. 12–13.) If, as the carriers suggest, this order was not enforceable under its own terms and this fact meant that the Colorado Court was incapable of enjoining it, we would be shocked that counsel for the carriers, wasting much of their clients' money, irresponsibly fought so diligently, both before the Colorado Court and the United States Supreme Court, to enjoin an order which couldn't be enjoined because it was not enforceable by its own provisions. The speciousness of this argument concerning the reason why the Denver Court refused to enjoin the Commission order is apparent on its face.

The carriers further state that the Colorado Court could not have made any findings concerning the carriers' purported waiver of their objection to the refund order because no such evidence was presented to it to support that finding other than the record of proceedings before the ICC. This suggestion is yet another attempt on their part to have this Court "review" the decision of the Denver Court after the Supreme Court has affirmed that decision. If the Denver Court erred in its basis for refusing to enjoin the refund order—that basis being the doctrine of equitable estoppel and waiver—the place to attack that rul-

ing as being based upon evidence outside the record before the Court was in the Supreme Court, not here.

Even were we willing to allow the carriers another attempt to review the Denver Court's factual determination, it is apparent that the finding of waiver and estoppel was based upon factual determinations made from the ICC record, which was before the Court, and not from any other source. Even in their brief filed herein, the carriers admit the existence of the specific factual occurrences which were the basis of the Denver Court's waiver and estoppel finding. Although stating that counsel for the carriers consistently maintained to the ICC that it would be illegal for the carriers to agree to the refund order, the carriers do acknowledge that they withdrew their objection to this order, although they obviously did it quite grudgingly because the Commission threatened to vacate its prior order postponing the hearing date, which delay would allow the carriers the time they needed to obtain the evidence in support of their proposed rate increases. This withdrawal of objection was the precise factual occurrence which appeared from the ICC record upon which the Denver Court based its waiver and estoppel finding. It is fatuous, therefore, for the carriers now to suggest that the Colorado Court only referred in dictum, and erroneously at that, to the *quid pro quo* received by the carriers for their withdrawal of their objection to the refund order. This finding, which is demonstrably correct from the ICC record before the Denver Court and the carriers' own admissions in this Court, is an integral element of the direct holding of the Denver Court that the carriers had waived their objection to the refund order and were estopped from contesting its validity.

The carriers also contend that several of the eight defendants in these proceedings were not party plaintiffs in the Denver case and are not, therefore, bound under the concept of res judicata by that decision irrespective of that Court's factual determinations. We agree

with these carriers that the doctrine of res judicata does not apply to them. The Supreme Court of the United States, however, has affirmed a decision which states that all carriers who were represented by the Middlewest Motor Freight Bureau, Inc., who were involved with the rate increases involved in ICC Docket No. 34971, and who withdrew their objections to the refund order have waived their objections and are estopped from contesting its validity. Based upon this Supreme Court decision and upon the fact that no suggestion is made that these few carriers were not part of the larger group who withdrew their objection to the refund order, these carriers, notwithstanding their lack of involvement in the Denver case, are estopped from so contesting the validity of the refund order because, under the doctrine of stare decisis, this Court must accept the Supreme Court's holding that all the carriers involved with these tariff increase proceedings are estopped from contesting the validity of the Commission refund order.[8]

Notwithstanding the defendants' characterization to the contrary, it is manifest that the plaintiff is not attempting in its motions for summary judgment to introduce nonevidentiary findings of the Denver case as res judicata herein against defendants who were not parties to that proceeding because (1) those findings *were* evidentiary, being based upon the ICC record properly before that Court and (2) they are not being applied against the carriers under the doctrine of res judicata but under the doctrine of stare decisis. Were the carriers' position

correct that they are not bound by the Supreme Court's affirmance of the decision which precludes the affected carriers from contesting the refund orders, the logical extension of this position would be that one carrier could sue to overturn an ICC order affecting thousands of carriers, and even after an adverse ruling affirmed by the Supreme Court, every other affected carrier could individually contest the validity of that order on a case by case basis until one carrier ultimately was successful. No rational utilization of limited court resources could tolerate such an obvious judicial waste after the Supreme Court of the United States has upheld the validity of the order.[9]

V

Defendants' next "supplemental" ground for opposing plaintiff's summary judgment motions is that "summary judgment at this stage in the proceedings is premature and inappropriate since numerous substantial questions of material fact remain in the proceedings before a determination can be made regarding the plaintiff's right to recover." The defendants argue that, even assuming (1) the validity of the refund portion of the ICC order of June 5, 1969, as modified on August 29, 1969, and (2) that plaintiff may properly bring an enforcement action under 49 U.S.C. §§ 16(2) and 305 (g), the defendants are nevertheless entitled to attack at a trial that portion of the Commission order which found that the increased rate of charges "have not been shown to be just and reasonable." For the first time in this overly-protract-

8. While no doubt exists that the doctrine of res judicata estops only parties to a prior lawsuit, or their privies, from contesting an issue raised and reviewed in that prior suit, the doctrine of stare decisis governs the decision of the same question in the same way even in an action between total strangers to that prior suit. Utilities Production Corporation v. Carter Oil Company, 72 F.2d 655, 662 (10th Cir. 1934) ; Stell v. Savannah-Chatham County Board of Education, 220 F.Supp. 667, 677 (S.D.Ga.1963), rev'd on other

grounds, 333 F.2d 55 (5th Cir. 1964), cert. denied, 379 U.S. 933, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964) ; Leake v. Jones, 18 FRD 80 (W.D.Okla.1955) ; United States v. Lee's "Save the Baby," 37 F.2d 137 (D.Conn.1929). *Cf.*, Bienville Water Supply Company v. Mobile, 186 U.S. 212, 217, 22 S.Ct. 820, 46 L.Ed. 1132 (1902). *See generally*, 21 C.J.S. Courts § 188.

9. *Cf.*, Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

ed litigation surrounding their roll-back agreement, the carriers now contest the validity of the hitherto unchallenged underlying portion of the ICC orders which held that the carriers had failed to meet their burden of proving that the new proposed rates were just and reasonable.[10]

The defendants' argument runs as follows: § 16(2) of the Interstate Commerce Act provides that suits for the enforcement of Commission orders for the payment of money shall proceed in all respects like other civil suits for damages and that the Commission's orders for such payment and the findings contained in such order shall be prima facie evidence of the facts therein stated. Therefore, the carriers contend, they can now rebut the Commission's finding, which is only prima facie evidence so far as these suits are concerned, that they failed to meet their burden of proof and that the plaintiff's summary judgment motions are premature because they should be allowed to wait until a trial to present their rebuttal evidence.

■ The carrier's above contention cannot be accepted for several reasons. Initially, their failure to attach evidentiary affidavits in support of their claim that they did meet their burden of proof before the Commission [11] must be deemed fatal to their claim. Because the plain-

tiff's incorporation into its summary judgment motions of the Commission order shifts the burden to the carriers to overcome the presumptions it creates against them,[12] and because the carriers have failed to file affidavits which would support their general contention that they did meet their burden of proof before the Commission of proving that the proposed rates were reasonable, no material issue of fact exists as to the issue which would preclude granting the plaintiff's motions for summary judgment under normal application of Rule 56, Fed. R.Civ.P., notwithstanding the carriers' vague claim that the proposed rates were just and reasonable.[13]

This failure to submit affidavits, which alone would authorize summary judgment for the plaintiff,[14] is peculiarly significant in the context of these proceedings because of the Court's limited scope of review over the Commission's determination that the carriers failed to prove the reasonableness of their proposed rate increases. In Interstate Commerce Commission v. Atlantic Coast Line R. Co.,[15] the Supreme Court articulated the standard of review of courts over Commission determinations in suits brought pursuant to 49 U.S.C. § 16(2). The Court held that if the challenged Commission determination was one which

---

10. Although the Denver Court stated that the action therein was seeking review of the Commission orders and did not state that the action was seeking review only of the refund portion of the orders, it is clear that the carriers limited their challenge to only the refund portions of the orders and did not assert any error as to the underlying portion of the orders that denied the requested tariff increases. The Denver Court, accordingly, never passed judgment on that underlying determination for the simple and obvious reason that it was never asked so to rule. See, Admiral-Merchants, *supra* n. 5, 321 F.Supp. at 354, 358.

11. The decision of the Commission of which the carriers here seek review was that the carriers failed to prove that the proposed rate increases were just and reasonable. The Commission did not specifically decide either that the rates were reasonable or that they were unreasonable.

12. Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409 (1939).

13. *See, e. g.,* Markwell v. General Tire and Rubber Company, 367 F.2d 748 (7th Cir. 1966) ; Wagoner v. Mountain Savings & Loan Ass'n, 311 F.2d 403, 406 (10th Cir. 1962) ; McPherson v. St. Paul Fire & Marine Insurance Co., 350 F.2d 563 (5th Cir. 1965) ; Gifford v. Travelers Protective Ass'n, 153 F.2d 209 (9th Cir. 1946) ; Wilkinson v. Powell, 149 F.2d 335 (5th Cir. 1945). *Cf.,* Chapman v. United States, 139 F.2d 327 (8th Cir. 1943) ; Pappas v. Bliss, 36 F.R.D. 691 (W.D.Pa.1965). See generally, 6 Moore's Federal Practice ¶¶ 56.11 [3], 56.17 [3], 56.22 [2].

14. See, Rule 56(e), Fed.R.Civ.P.

15. 383 U.S. 576, 589–595, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966).

would be required under the doctrine of primary jurisdiction [16] to be determined first by the Commission, those findings must be deemed conclusively correct in the case of judicial review in § 16(2) proceedings except to the extent pointed out in prior direct review proceedings.

■ Because it is clear that the determination of the reasonableness of rates is one which falls within the primary jurisdiction of the Commission,[17] we conclude that the Commission's related determination that the carriers had failed to meet their burden of proving the reasonableness of their proposed rates likewise falls within the doctrine of primary jurisdiction because that determination, like all rate determinations, falls within that category of issues of fact arising under a complex regulatory scheme outside a court's normal experience [18] and "is an inquiry [that is] essentially one of fact and of discretion in technical matters" whose evaluation depends upon evaluation of "voluminous and conflicting testimony" that can only be accomplished by expert knowledge of the transportation industry.[19]

Once having determined that this issue does fall within the Commission's primary jurisdiction, *Atlantic Coast Line*, in interpreting prior cases, makes clear the scope of review of federal courts over such determinations. The courts may "consider whether the Commission action exceeded constitutional power or right, whether the administrative order was within the scope of authority delegated, and whether the

exercise of authority was reasonable, but [the courts cannot] 'usurp merely administrative functions by setting aside a lawful administrative order upon [the courts'] conception as to whether the administrative power has been wisely exercised. Power to make the order and not the mere expediency of wisdom of having made it, is the question.' " [20]

Thus, our review of the Commission's order that the carriers had failed to meet their burden of proving the reasonableness of their proposed rates would, at most, be to determine if that finding was within the Commission's statutory powers [21] and if the order was supported by substantial evidence. The carriers notably have failed to indicate in what manner this Commission finding is unsupported by substantial evidence; they merely contend vaguely that after-the-fact evidence indicates that the rates they proposed ultimately proved to be reasonable. Considering the prima facie validity with which § 16(2) clothes the Commission order, the extremely narrow scope of review which this Court could exercise in any event over the Commission's determination, and the lack of any evidentiary support by the carriers in support of their opposition to plaintiff's motions for summary judgment which could trigger our narrow scope of review, we do not believe that the carriers have successfully put into controversy the validity of the Commission's finding that they failed to meet their burden to prove the reasonableness of their proposed rates so as to create a material

16. *See*, Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472 (1913); United States v. Western Pacific R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

17. See cases cited n. 16, *supra*.

18. Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

19. Great Northern R. Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922).

20. Interstate Commerce Commission v. Atlantic Coast Line R. Co., *supra* n. 15,

at 593, 86 S.Ct. at 1011, 16 L.Ed.2d 109 quoting from Interstate Commerce Commission v. Illinois Central R. Co., 215 U.S. 452, 470, 30 S.Ct. 155, 54 L.Ed. 280 (1910). *See also*, Illinois Central R. Co. v. Norfolk & Western Ry., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); Locust Cartage Co. v. Transamerican Freight Lines, Inc., 430 F.2d 334 (1st Cir. 1970).

21. The carriers have never suggested that the Commission was without the power to determine whether or not their proposed rates were reasonable.

issue of fact on this issue. Accordingly, the plaintiff's motions for summary judgment cannot be denied because of this purported fact question.

 Even if defendants did properly submit affidavits in support of their contested fact issue, we nevertheless believe that the resulting factual conflict would not be a *material* issue of fact so as to preclude summary judgment.[22] In the typical suit brought under § 16(2) for reparations, the carriers may contest in court the underlying factual determinations made by the Commission that the moneys ordered to be paid to the shippers were collected through unjust or unreasonable rates. The instant Commission order, however, does not present the Court with this typical issue of a reparations suit because ·(1) the order issued by the Commission was not a reparations order[23] and (2) the carriers agreed, prior to the Commission hearing, to return the increased tariffs collected should the increases not be approved.[24]

As has been reiterated many times during the course of the proceedings herein and in Denver, the carriers, as a *quid pro quo* for a delay in the Commission hearing, did agree to the condition extracted by the Commission that, should that body ultimately not approve the proposed tariff increases, the carriers would refund that increment collected during the pendency of the administra-tive proceedings. The carriers did not agree to return the money only if the Commission did not approve the proposed tariffs *and* such disapproval were upheld after protracted court challenge; rather, they agreed to return the incremental receipts "to the extent that the increases or any portion thereof under investigation herein are not approved by the Commission."[25]

Because the increases were not approved, the condition precedent for the return of the moneys has occurred and the carriers must now honor their agreement. Had the carriers protested this conditional agreement throughout all the Commission proceedings and not withdrawn their objection thereto only to raise it again after an adverse administrative decision, these proceedings would have presented an appropriate forum to raise their objections to the refund order *and* the underlying factual determination. Not having followed this course of action, however, it would not be appropriate for the carriers presently to be allowed the opportunity to contest the Commission action after they agreed to roll back the increased moneys collected should the Commission rule adversely to them and after that condition precedent for the refund has occurred.

 Finally, even if the failure to submit affidavits concerning the underlying Commission determination regarding the reasonableness of the proposed

22. Rule 56(c), Fed.R.Civ.P., authorizes the granting of summary judgment when there is no genuine issue of *material* fact.

23. See n. 7, *supra*.

24. The carriers again claim that they never agreed to the terms of the Commission order. The record is clear, however, that they did. After the Commission, in similar cases involving other carriers who needed time to develop their supporting evidence but who refused to agree to a similar refund order as a *quid pro quo* for an extension of the Commission hearing date, withdrew the prior-granted hearing postponement because it believed that the carriers should have been prepared and ready to submit evidence to prove the lawfulness of their proposed tariff charges at the time that the proposed charges were filed with the Commission, *see* Increased Rates and Charges, Pacific Inland Terr., 332 I.C.C. 845 (Feb. 14, 1969), and General Increase, Middle Atlantic and New England, 332 I.C.C. 820 (Feb. 14, 1969), the carriers herein chose to withdraw their objections to the Commission order rather than be compelled to face immediately that body with no evidence to support their proposed tariff increases. This withdrawal of objection was the factual basis for the Denver court's conclusion, which is binding upon this Court, see Part IV of this opinion, *supra*, that the carriers agreed to the order.

25. ICC Order of April 25, 1968, Docket No. 34971.

rates were overcome and even if the carriers may not be deemed to have waived any objection to this underlying determination, the carriers nevertheless cannot now urge as invalid an aspect of the Commission order different than that previously urged as invalid before the Denver Court. Having once brought a review proceeding under § 17(9) of the Act [26] challenging a portion of a Commission order on only one ground, a carrier must be deemed to have waived any objection to any other portion of the order not so challenged and cannot be allowed to controvert the remainder on a piece-meal basis. Accordingly, we conclude that the carriers herein have waived their right to contest the validity of the ICC order as it relates to the Commission's findings that the carriers had not met their burden of proving the justness and reasonableness of the proposed tariff increases because of their failure to raise this underlying ground for invalidity when they challenged the validity of the refund portion of that order before the Denver Court pursuant to § § 17(g) of the Act.[27]

▆ Finally, the carriers contend that other fact issues exist which also preclude the granting of summary judgment, such as the issue of whether the plaintiff was the party to bear the increased freight charges or whether it passed such charges on to its customers in the form of price increases. Irrespective of whether these issues would be relevant in a statutory reparations suit or a common law restitution suit, such issues are totally irrelevant and immaterial to this suit seeking to compel the carriers to honor their agreement to refund the moneys. The only factual issue which could be before the Court is the *amount* of moneys owed by the carriers to the plaintiff, but this issue has been stipulated to and is the only factual issue which the defendants do not contest.

Based on the above, we conclude that, contrary to the carriers' suggestion, summary judgment is not premature at this stage of these proceedings because no material issue of fact exists which the carriers may contest or have contested.

## VI

▆ In their motions for summary judgment, the plaintiff has asked for interest on the refunds due from each defendant from the date of the first effective refund order entered by the Com-

---

26. 49 U.S.C. § 17(9). This section is made applicable to motor carriers through §§ 205(g) and (h) of the Motor Carrier Act, 49 U.S.C. §§ 305(g) and (h).

27. *See* n. 10, *supra*. The Court recognizes that, as a general matter, this finding of waiver could not be applied against the few defendants who were not party to the Denver proceedings because the doctrine of waiver generally requires actual participation on the part of the parties to be charged. We believe, however, that the opportunity for this doctrine as it is generally applied to be perverted is quite significant when, as here, a large number of carriers are represented by the same counsel who file all the court suits, complaints, briefs, motions, etc. in all the litigation concerning a particular Commission proceeding and the designated party plaintiffs in a suit to overturn the controverted Commission order are selected by counsel for the larger group. Counsel can select only one or two of the affected carriers as party plaintiffs in that suit, which would secure all the benefits to all affected carriers should that suit succeed, but which would bind under the waiver doctrine only the few named party plaintiffs should the Commission ultimately prevail in that suit. We do not, however, have to reach this difficult application of the doctrine of waiver as to the few carriers who were not involved in the Denver case because of our conclusions concerning the failure of all defendants herein to file affidavits in opposition to the summary judgment motions, because of our determination that the primary jurisdiction doctrine provides only for a narrow scope of review over the Commission order which has not been activated by anything profered by the defendants, and because of our conclusions that the carriers' agreement to roll back the increased charges if and when the Commission ruled adversely on the proposed increases precludes their challenging that order and its underlying findings.

mission.[28] In opposition to this request, the carriers contend that the Commission order relied upon by the plaintiff does not provide by its terms or otherwise for interest to be collected from the time of its entry antecedent to a judgment by a court of law and that plaintiff's prayer, therefore, is manifestly outside of the terms of the very order upon which it relies.

While the carriers are correct that the order does not state that interest shall accrue if the carriers refuse to comply with its terms, it is nevertheless clear that § 16(2) of the Interstate Commerce Act, the statute upon which plaintiff relies, represents the Congressional policy of encouraging the prompt payment of moneys ordered by the Commission to be paid.[29] If interest accruing from the date of an ignored Commission order were to be denied, the carriers could have the use of the money that belongs to the shipper(s) for so long as they can delay and contest the Commission order, which possibility surely would tend to discourage prompt payment of Commission orders for the payment of money in direct contradiction of Congressional policy. In the instant case, for example, this period of delay has already been protracted by the carriers for almost three years since the Commission first ordered them to return the moneys that plaintiff is here seeking. In addition, without such interest award, there is no way that the shippers could be made whole after the carriers herein have reneged on their agreement to roll back the unapproved portion of the increased tariffs collected. Accordingly, we conclude that the shippers are entitled to interest on the refunds due from each defendant at the rate of 6% from the date of the first effective Commission refund order, June 5, 1969.[30]

## VI

The plaintiff has prayed for attorneys' fees in these suits. As we indicated in our prior opinions incorporated herein, we are of the belief that it is entitled to secure reasonable attorneys' fees pursuant to 49 U.S.C. § 16 (2).[31] The carriers have objected to the fees requested by the plaintiff on the ground that, even if our legal conclusion is correct, the amount of these requested fees is so exorbitant that, if they were granted, they would constitute a fine and forfeiture far beyond the contemplated award conceived by Congress.

We disagree with the carriers' contention that the mere fact the requested attorneys' fees almost equal the amount of the underlying claims renders them invalid. The Congressional scheme of providing for attorneys' fees was to discourage carriers from disregarding Commission orders for the payment of

28. In its order of June 5, 1969, the Commission, after announcing its finding that the carriers had not shown the proposed tariffs to be just and reasonable, stated: [T]he respondents [the carriers participating in the tariffs under investigation] be, and they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases found not shown to be just and reasonable. I.C.C. Order of June 5, 1969, Docket No. 34971.

29. Interstate Commerce Commission v. Atlantic Coast Line R. Co. *supra* n. 15, 383 U.S. at 595, 86 S.Ct. 1000, 16 L.Ed.2d 109.

30. *Cf.* Pennsylvania R. Co. v. Minds, 250 U.S. 368, 371, 39 S.Ct. 531, 63 L.Ed. 1039 (1919) ; Louisville & Nashville R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 240, 46 S.Ct. 73, 70 L.Ed. 242 (1925) ; City of Danville v. Chesapeake & Ohio R. Co., 34 F.Supp. 620 (W.D.Va. 1940).

31. In our memorandum opinion of November 30, 1971, in Aluminum Company of America v. Admiral-Merchants *Motor Freight, Inc.*, et. al., *supra* n. 4, we rejected the carriers' suggestion that even if the right to sue created by 49 U.S.C. § 16(2) was incorporated into 49 U.S.C. § 305(g), § 16(2)'s authorization for reasonable attorneys' fees for a prevailing plaintiff bringing suit under that section was not also incorporated. We concluded, to the contrary, that § 16(2) was not selectively incorporated and granted the plaintiff reasonable attorneys' fees.

money by compelling them to pay the shipper's costs of bringing a successful enforcement suit. If the carriers honored the order and did not contest it, there would not be any attorneys' fees at all. As they become increasingly belligerent in resisting a shipper's enforcement claim, however, the shipper's attorneys' fees obviously will continue to increase in size with no relationship at all to the amount of the underlying claim contained in the Commission order. The carriers' logic is incredible indeed when they suggest that the plaintiff's requested attorneys' fees should be disallowed merely because they (the carriers) have compelled plaintiff, through protracted litigation, to incur extensive attorneys' fees in its attempt to collect the moneys ordered by the Commission to be paid.

Notwithstanding our disagreement with the carriers, we nevertheless are presently unable to award attorneys' fees to the plaintiff because of a dearth of relevant information before the Court. In the first three cases previously concluded, we awarded fees on a basis significantly different from that suggested herein and in amounts that all parties agreed were reasonable attorneys' fees. If and when the plaintiff provides the Court with a breakdown of costs, attorney hours, and rates as was provided in the three previous cases, we shall enter an award for reasonable attorneys' fees.

### VIII

Based upon all of the above and upon our prior opinions incorporated herein, we believe that the defendants' purported grounds in opposition to the plaintiff's motions for summary judgment are not meritorious and that the plaintiff's motions are well founded. Accordingly, the defendants' motions to dismiss or for summary judgment must be denied and the plaintiff's motions for summary judgment must be granted. Counsel for the plaintiff shall prepare within short date an order consistent with the foregoing for each of the eight pending cases.