**UNITED STATES of America, Plaintiff,**

v.

**BURLINGTON TRUCK LINE, INC.,
et al., Defendants.**

No. 19339–4.

United States District Court,
W. D. Missouri, W. D.

March 1, 1973.

Bert C. Hurn, U. S. Dist. Atty., A. Paul White, Sara Najjar, Asst. U. S. Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Donald J. Quinn, Kansas City, Mo., Arthur Hauver, Denver, Colo., for defendants.

## FINDINGS, OPINION AND JUDGMENT

ELMO B. HUNTER, District Judge.

On May 4, 1971, the complaint was filed in the above-styled cause predicating relief upon certain orders of the Interstate Commerce Commission. Sometime after the filing of the complaint, the defendants moved to stay all further proceedings pending a final adjudication of Admiral-Merchants Motor Freight, Inc., et al. v. United States and the Interstate Commerce Commission, 321 F. Supp. 353 (D.Colo.1971), aff'd without opinion, 404 U.S. 802, 92 S.Ct. 51, 30 L. Ed.2d 37, reh. den. 404 U.S. 987, 92 S. Ct. 443, 30 L.Ed.2d 371 (1971). This action, before a three-judge court in Colorado, involved the validity of the refund order of the Interstate Commerce Commission here in question. Pursuant to an interlocutory injunction issued by that court restraining the enforcement of the Commission's order pending a determination on the merits, this Court stayed further proceedings in this case. However, after the three-judge court issued its opinion, subsequently affirmed on appeal by the United States Supreme Court, 321 F.Supp. 353 (D.Colo.1971), aff'd. 404 U.S. 802, 92 S.Ct. 51, 30 L. Ed.2d 37 (1971), this action was rein-

stated. A full trial on the merits was thereafter held before the Court.[1]

## JURISDICTION AND VENUE

Jurisdiction is premised on 28 U.S.C. § 1345, which reads:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.[2]

There has been no attack on the propriety of venue in this judicial district thereby obviating the necessity of the Court to affirmatively rule on this aspect of the action, other than by noting that any arguable defect in venue has been waived by the failure to object or otherwise timely and properly raise this issue. Hoiness v. United States, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16 (1948), Anno.: 93 L.Ed. 21; Erie-Lackawanna R. Co. v. United States, 279 F. Supp. 316 (S.D.N.Y.1967), remanded on other grounds, 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968); Rhodes v. United States, 218 F.Supp. 382 (W.D. Pa.1963).[3] Accordingly, this Court has jurisdiction and will proceed to rule on the merits of the action.

## FINDINGS OF FACT

The facts in this case are essentially not disputed. The Middlewest Motor Freight Bureau is a nonprofit corporation which acts as a tariff-publishing agent for numerous motor carriers. The Bureau assembles, prepares and presents evidence before the Interstate Commerce Commission in support of challenged increases in rates.[4] The defendants are all motor carriers subject to the provisions of the Interstate Commerce Act, 49 U.S.C. § 1 et seq. The defendants, as members of the Bureau, all participated in the instant increase in tariffs and were subject to the Interstate Commerce Commission's orders relating thereto.[5]

As a result of schedules filed 30 days earlier with the Commission and which became effective on April 1, 1968, the defendants participated in tariffs published by the Bureau establishing increased class and commodity truckload and less than truckload rates for serv-

1. This is the second of three cases before the Court seeking enforcement of this identical refund order. See, Proctor and Gamble Co. v. Byers Transportation Co., Inc., 355 F.Supp. 547 (W.D.Mo.1973) and Western Electric Co., Inc. v. Burlington Truck Lines, Inc., No. 18471–4 (W.D. Mo. March 6, 1973).

The legal theories are set out in more detail in the *Proctor and Gamble* opinion, and reference to that decision should be made for such details.

2. See also 28 U.S.C. § 1336.

3. 28 U.S.C. § 1398(a) reads in pertinent part:

Except as otherwise provided by law, any civil action to enforce . . . an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action.

49 U.S.C. § 16(2) has a separate venue provision:

If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which it is located the principal operating office of the carrier, or through which the road of the carrier runs . . . a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises.

See, Montgomery Ward and Co. v. Anderson Motor Service, 339 F.Supp. 713 (W.D.Mo.1971); 28 U.S.C. § 1406(b).

4. For a brief explanation of the rate-making procedures followed by motor carriers before the Commission see Proctor and Gamble Co. v. Byers Transportation Co., 355 F.Supp. 547 (W.D.Mo., 1973).

5. See, Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 142 (No. 34971, June 5, 1969).

ices in the Middlewest Territory, in an amount of approximately five per cent for shipments of less than 5000 pounds and three per cent for those over 5000 pounds. Upon protests by various parties, both private and public,[6] the Interstate Commerce Commission, by order of March 29, 1968, instituted an investigation, without suspension, into the lawfulness of the proposed schedules.[7]

By order of April 3, 1968, the proceeding was set for hearing on May 20, 1968. The order bypassed the procedure before an examiner and provided that the proceeding would not be the subject of an examiner's recommended report and order because the circumstances required an expedited decision. This order also elaborated the specific information and supporting data the Commission desired from the carriers by May 20, 1968, for use by the Commission in making its determination into the reasonableness of the increases. The order detailed:

> That all of the required data specified in this order shall be based upon and reflect at least the 1967 annual reporting period.

Additionally, the order set forth the type of evidence desired from the protestants, Department of Transportation and the General Services Administration, supporting their protest.

It is in this posture that the order complained of, and here sought to be enforced, was subsequently issued. More particularly, on April 12, 1968, the General Services Administration joined with the Department of Transportation in a request for a 90 day extension of time in which to submit the desired evidence, together with a commensurate postponement of the hearing date. In support of the requested extensions of time it was stated:

> Much of the evidence requested will require the collection and intensive

analysis of 1967 motor carrier annual reports to the Commission, due March 31, 1968.

By letter dated April 22, 1968, directed to the Interstate Commerce Commission concerning the hearing date, counsel for the Bureau sought a like 90-day postponement for "the reason . . . that it is a physical impossibility for respondents to compile the required data within the time allowed by the order . . . . The time required to process. the 1967 traffic data is the factor which makes compliance with the dates set in the order impossible, and makes the requested ninety day postponement imperative." The Bureau also sought a change in the hearing location from Washington, D. C., to Kansas City, Missouri.

Subsequently, the Commission held an informal prehearing conference on the subject of these requests for additional time and necessary postponement of the hearing date.

On April 25, 1968, the Commission granted the requested extension of time to comport with the Bureau's proposed schedule continuing the hearing to August 19, 1968, "conditioned upon respondents' [motor carriers] compliance with the refund provision ordered below", which read:

> *And it is further ordered,*
>
> That respondents be, and, they are hereby ordered to make refunds to the shippers on any shipments moving after May 20, 1968, to the extent that the increases or any portion thereof under investigation herein are not approved by the Commission.

On May 3, 1968, the Bureau prepared and filed a petition for reconsideration of the refund language contained in the order. However, after filing the petition it came to the attention of the attorneys for the Bureau that in a differ-

6. The only protestants who subsequently actively participated in the hearing were the United States Department of Transportation and the General Services Administration.

7. See, 49 U.S.C. § 316(g).

ent proceeding before the Commission there was another rate bureau in the same situation. A similar refund order had been issued against that bureau on its request for a continuance. They had also filed a petition for reconsideration. The Commission in those proceedings granted the petition for reconsideration and vacated the refund order, but also reinstated the original date for hearings and other procedures.[8] With this knowledge counsel then conferred with the Middlewest carriers and, thereafter the petition for reconsideration was withdrawn by the Bureau, leaving the order of April 25, 1968, remaining in effect.

A hearing on the merits was held on August 19, 1968, as set in the order of April 25, 1968, and on June 5, 1969, the report and order of the Commission in the proceeding was issued.[9] After detailing the basis for the decision, the Commission found "that the proposed increases have not been shown to be just and reasonable." The Commission directed the carriers to cancel the schedule reflecting the unwarranted increase as provided by law, and further ordered:

> That in accordance with the order entered herein on April 25, 1968, the respondents be, and that they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases herein found not shown to be just and reasonable.

The Bureau thereafter filed a petition to vacate that portion of the order of June 5, 1969, which required payment of refunds, and asked for reconsideration of the refund order, or in the alternative, the reopening of the proceeding for further hearing. During the pendency of this request, the disputed increases were cancelled on statutory notice effective August 31, 1969. However, simul-

taneously, the carriers filed new schedules reflecting higher increases to become effective September 1, 1969. Upon inquiry, the Commission, through the Board of Suspension, declined to suspend or investigate the new scheduled increases.[10] Various protestants appealed this decision to the entire Commission which on August 29, 1969, entered an order declining to suspend or investigate the increases and, at the same time, denying the carriers' petition to reconsider and vacate the refund order. The Commission further ordered:

> . . . the respondents will hereinafter, in accordance with the said decision of June 5, 1969, make refunds to shippers presenting their claims to the carriers supported by paid freight bills or other appropriate evidence.

On October 27, 1969, the Commission had before it and considered a petition filed October 9, 1969, by the Bureau for reconsideration of the June 5, 1969, decision as affirmed on August 29, 1969. The Commission denied the carriers' petition, not on the grounds that it was merely a successive request but on the merits, and noted:

> . . . the order of August 29, 1969, did not change the liability for making refunds, previously determined, but appropriately placed the burden for supporting claims for refunds upon the shippers who paid the charges.

## PRIOR LITIGATION CONCERNING THE JUNE 5, 1969 ORDER

On January 26, 1970, various carriers filed a complaint in the United States District Court for the District of Colorado entitled Admiral-Merchants Motor Freight, Inc., et al., v. United States of America and Interstate Commerce Commission.[11] The action sought review of that portion of the June 5, 1969

8. See, Increased Rates and Charges, Pacific Inland Territory, 332 I.C.C. 845.

9. Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 142 (No. 34971, June 5, 1969).

10. See 49 U.S.C. § 316(g).

11. Now reported, 321 F.Supp. 353 (D.Colo. 1971), aff'd without opinion, 404 U.S. 802, 92 S.Ct. 51, reh. den. 404 U.S. 987, 92 S.Ct. 443 (1971).

order requiring refund, with the requested relief being the setting aside and enjoining of the provision as beyond the statutory authority and jurisdiction of the Commission.

The opinion entered on January 14, 1971, in *Admiral-Merchants*, after a brief recitation as to the facts and jurisdiction, focused on the issue of whether the conditional rate refund order of June 5, 1969, was invalid and subject to a judgment annuling the same. The Court in dismissing the action relied on three separate and distinct grounds:

(1) the imposition of a conditional refund order tacitly or impliedly accepted by the carriers through the withdrawal of their objection to the order, as a prerequisite to the granting of an extension of time requested by the carriers, was purely procedural and within the authority of the Commission,

(2) the carriers, under the doctrine of equitable estoppel, were foreclosed from attacking the refund order after the withdrawal of their jurisdictional objection to the condition because of the Commission's reliance on this act, and

(3) the affirmative withdrawal of any objection by the carriers to the order amounted to a binding waiver on their part.

The Court concluded:

We are unable in good conscience, in view of the circumstances presented, to annul the order of the Commission. The Commission was acting in good faith in granting the extension, and the carriers were at the time agreeable to acceptance of the benefits of such an extension order. Their present posture appears to us to be grossly inequitable and not deserving of court intervention. While we do not commend the procedure as one which should be or could be practiced, we do hold that the peculiar facts of this case, arising as they did, are such as to not justify the granting of the relief requested, namely annulment of the Commission's order and approval of the carriers' conduct.

Since the *Admiral-Merchants* case was decided and affirmed without opinion by the Supreme Court,[12] various decisions have been forthcoming concerning the above-discussed orders of the Interstate Commerce Commission.[13] The Court will refer to these decisions from time to time as they appear relevant and enlightening.

## THE RES JUDICATA QUESTION

The defendants in this action raise, among others, the defense that the June 5, 1969 order of the Commission is invalid. This assertion is premised primarily on three separate arguments: (1) the order requiring refund is confiscatory, (2) the Commission did not offer the Bureau a fair hearing on the issue of lawfulness of rates, and (3) the rates in question were just and reasonable.

The import of the *Admiral-Merchants'* decision immediately raises the doctrine of res judicata and the applicability of that doctrine to the attacks here made

12. 404 U.S. 802, 92 S.Ct. 51 (1971).

13. Proctor and Gamble Co. v. Byers Transportation Co., supra. Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill.1972) and accompanying unpublished Memorandum Opinions No: 70 C 1189, 1190, 1197, Nov. 30, 1971, and Jan. 28, 1972; Aluminum Company of America v. Burlington Truck Lines, Inc., 342 F.Supp. 166 (N.D.Ill.1972) and accompanying unpublished Memorandum Opinion, No. 70 C 1191–1195, 1198–1200 (May 3, 1972); Bela Seating Co. v. Advance Transportation Co., 344 F.Supp. 854 (N.D.Ill.1972); Land O' Lakes, Inc. v. United-Buckingham Freight Lines, Inc., 351 F.Supp. 102 (D.Minn.1972); S. S. Kresge Co. v. A & B Transfer, Inc., unreported opinion No. 34887 (E.D.Mich. June 30, 1972); Appleton Electric Co. v. Advance-United Expressways, unreported opinion No. 70 C 1427 (N.D.Ill. Feb. 25, 1972); American Home Products Corp. v. A & B Transfer, Inc., unreported opinion, No. 70 C 1562, 71 C 1236 (N.D.Ill. Sept. 29, 1972); and Container Corp. v. Admiral-Merchants, unreported opinion No. 71 C 996 (N.D.Ill., May 30, 1972).

on the validity of the Interstate Commerce Commission's order.[14]

It is not disputed that the various orders of the Commission as earlier set out apply to and affect the defendant named in this action. The preliminary determination in view of the res judicata question is whether the defendants may successfully attack in this proceeding either (1) the validity of the refund portion of the Interstate Commerce Commission's order of June 5, 1969, as implemented by the Commission, or (2) the finding of the Commission on June 5, 1969, that the defendants failed to carry their burden of showing the increase just and reasonable. For the reasons enumerated below, the Court finds that the orders of the Commission were valid in all respects here challenged, and therefore, enforceable through the proper procedures.

## THE COMMISSION'S ORDER OF JUNE 5, 1969

██ The Court finds that the defendants are precluded from attacking the validity of the June 5, 1969 order of the Commission under the principle of res judicata and its related concepts. It is well settled that:

> Res judicata . . . makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, that were or should have been adjudicated in the proceeding.[15]

██ Due to the nature of orders from the Interstate Commerce Commission, that is through their potential effect on numerous parties, the doctrine of res judicata is applicable in certain instances extending the effect of judicial determination of those orders to those carriers represented before the Commission, but not a named party in the action for judicial review. The rationale for this view is clearly seen in the instant case. The Bureau represents numerous individual carriers throughout a limited geographical area in proceedings before the Interstate Commerce Commission. More particularly, it is upon the Bureau to prove before the Commission that an increase in rates is just and reasonable as set out in the statutory framework. If the Commission determines the rates were not shown to be just and reasonable and this decision was administratively exhausted, the persons aggrieved may seek judicial review. It would seem most expedient for the Bureau to continue its representation of the numerous carriers on review. To presume that each individual carrier has a separate right of review of the same Commission order would cause a proliferation of actions, excessive waste of judicial time, and potentially inconsistent decisions. This is expecially true where, as here, the validity of the order has been determined on the merits by a three-judge court and affirmed by the Supreme Court upon application by a representative number of those carriers affected.

Accordingly, for these reasons, as well as the considerations expressed in *Proctor and Gamble, supra,* footnote 1, the Court finds the defendants herein in privity with the carriers instigating the Colorado action, and bound by the determination made in *Admiral-Merchants* concerning the contention that the refund portion of the June 5, 1969 order was invalid, confiscatory or otherwise unlawful or void. Thus, in accordance with the decision in *Admiral-Mer-*

14. Unless this Court finds that the order here sought to be enforced by the plaintiffs and attacked by the defendants is valid, whether by way of res judicata or on the merits, the question of recovery need not be reached.

15. 1B Moore's Federal Practice, ¶ 0.405, p. 624 (1965) ; See, Smith v. United States, 369 F.2d 49 (8th Cir. 1966) ; Hudson v. American Surety Company of New York, 377 F.2d 698 (8th Cir. 1967) ; Industrial Credit Co., v. Berg, 388 F.2d 835 (9th Cir. 1968).

*chants,* these contentions raised in this action are deemed to be without merit.[16]

There is no contention in this action that the Bureau sustained their burden before the Commission of proving the increases just and reasonable.[17] The defendants appear to maintain the position that, notwithstanding the underlying determination by the Commission, the rates charged by the defendants from May 20, 1968, until August 31, 1969 were in fact just and reasonable, and, therefore, contend the plaintiffs are not entitled to any refund. The Court deems this argument and contention to be without merit.

By the order of June 5, 1969, the Commission determined that: (1) The increase in rates was not justified, and (2) in accordance with this determination, a refund of the total increase was required.

■ The failure of the carriers to meet the burden placed upon them by 49 U.S.C. § 316(g), under the facts of this case, immediately resulted in their potential obligation to pay the ordered refunds, both under restitutional principles and any applicable statutory enforcement provision. The defendants' assertion that the rates were affirmatively just and reasonable is irrelevant in light of the Commission's decision. The carriers were obligated by statute to show their rates just and reasonable at the time of the hearing. The fact that the carriers were later able to justi-fy an even higher tariff schedule, does not negate the Commission's findings and order of June 5, 1969.

### THE STATUTORY CAUSE OF ACTION

■ Section 205(g) of the Interstate Commerce Act, 49 U.S.C. § 305(g) states that final orders made in relation to motor carriers are subject to the same right of judicial relief as provided for carriers by rail. Section 16(2), Title 49 United States Code, provides:

> If a carrier does not comply with an order for the payment of money . . . any person for whose benefit such order was made, may file in the district court of the United States . . . a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages . . . .

For the reasons enunciated in *Proctor and Gamble, supra,* Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill. 1972) and Aluminum Company of America v. Burlington Truck Lines, 342 F. Supp. 166 (N.D.Ill.1972), the Court finds that 49 U.S.C. § 16(2) does provide a statutory cause of action to the plaintiff under the facts presented.[18]

■ The Court finds that the order of the Commission on June 5, 1969, to

16. In addition to this finding, in applying stare decisis to what appears to be here the identical factual and legal challenge to the Commission's order as was before the three-judge court, the Court here adopts the Admiral-Merchants' finding and rationale and affirmatively rules that the refund order here was valid. See, S. S. Kresge and Land O' Lakes, supra, footnote 2.

17. Notwithstanding this position, the Court hereby adopts the reasoning and rationale enunciated in Proctor and Gamble concerning an attack on the Commission's finding of June 5, 1969, that the carriers failed to carry their burden of showing the increase to be just and reasonable.

18. Although the complaint does not specifically plead statutory relief based upon 49 U.S.C. § 16(2), the Court does not deem this to be an impediment to granting relief under this provision. The complaint specifically sets out those portions of the Commission's order upon which the plaintiff predicates relief. It is not necessary to aver the specific statutory section or legal theory in the complaint. This is especially true where, as here, the defendants are fully apprised of the nature of the action. See, Proctor and Gamble v. Byers Transportation Company, 355 F.Supp. 547 (W.D.Mo.1973), and authorities cited therein.

the effect that a refund was required because the proposed increases were not shown to be just and reasonable, was an order for the payment of money to the extent that charges on shipments moving after May 20, 1968, included the increases. Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 142 (No. 34971, June 5, 1969); 49 U.S.C. § 16(2); Middlewest Motor Freight Bureau v. United States, 433 F.2d 212 (8th Cir. 1970), cert. den. 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971).

Notwithstanding the determination that the plaintiff has a cause of action under § 16(2), the Court finds that the plaintiff has also succeeded, under the facts, on presenting a claim based on restitution. Because of the defendants' acceptance of the extension of time conditioned upon the payment of refunds if the Commission determined the increase was not warranted, the defendants owed the refunds upon the final order of the Commission after judicial review found such order valid. See Middlewest Motor Freight Bureau v. United States, 433 F. 2d 212 (8th Cir. 1970), cert. den. 402 U. S. 999, 91 S.Ct. 2169 (1971).[19]

## STATUTE OF LIMITATIONS

The defendants contend that prosecution of this action is barred by the applicable statute of limitations. Section 16(3)(i), Title 49 United States Code states:

· That with respect to such transportation of property or passengers for or on behalf of the United States, the periods of limitation herein provided shall be extended to include three years from the date of (A) payment of charges for the transportation involved, or (B) subsequent refund for overpayment of such charges, or (C) deductions made under section 322 of the Transportation Act of 1940, whichever is later.[20]

Since it unequivocally appears that less than three years transpired from May 20, 1968, the date of first payment by the plaintiff of the transportation charges here involved, until the filing of the complaint, the defendants' contention is totally without merit.

## DAMAGES

Under either theory of recovery it is evident from the various orders of the Commission, that the plaintiff is entitled to an award of damages equivalent to the amount of the freight charges from May 20, 1968, to August 31, 1969, exacted from the plaintiff by the defendants, to the extent these charges included the increases subsequently found by the Commission not shown to be just and reasonable. This amount has been agreed to by the parties, and according to the stipulation, judgment is hereby entered in favor of the plaintiff, United States of America, against each of the named defendants in the following amounts, with interest at the rate of four per cent per annum from May 4, 1971:[21]

19. In light of this position it is unnecessary to determine what recovery, if any, the plaintiff would be entitled to had the Commission not ordered a refund upon their finding that the rates were not shown to be just and unreasonable.

20. See also, 49 U.S.C. § 304a(8).

21. The plaintiff prays for interest at four per cent from June 5, 1969. Although in Aluminum Company of America v. Burlington Truck Line, Inc., 342 F.Supp. 166 (N.D.Ill.1972), interest was awarded from the date of the first effective order of the Commission, the Court finds that because of the wording of the August 29, 1969 order ("make refunds to shippers presenting their claims to the carriers"), interest should not run until demand has been made. To do otherwise would award the plaintiff for its own neglect. However, neither the file nor any evidence adduced at the trial reflects the date demand was made. Accordingly, in conformance with the congressional policy encouraging prompt payment of moneys ordered by the Commission, the appropriate date for calculating interest on the judgment is the date of the filing of the complaint.

Burlington Truck Line, Inc., $520.34; Capital Truck Lines, Inc., $657.22; Churchill Truck Lines, Inc., $149.85; Graves Truck Line, Inc., $782.14; Manley Transfer Company, Inc., $948.91; Middlewest Freightways, Inc., $179.01; Morrison Motor Freight, Inc., $346.40; Motor Freight Corporation, $129.25; Pic-Walsh Freight Company, $215.76; Topeka Motor Freight, Inc., $86.86; Wilson Freight Company, $708.57; and, Yellow Freight System, Inc., $4,122.08.

Defendants are to pay the costs of this action on an equal basis.

It is so ordered.