**LAND O'LAKES, INC., Plaintiff,**

v.

**UNITED–BUCKINGHAM FREIGHT LINES, Inc.,\* Defendants.**
Nos. 4–71 Civ. 221 to 4–71 Civ. 238 and 4–71 Civ. 240.

United States District Court,
D. Minnesota,
Fourth Division.
May 3, 1973.

\* Consolidated with; Land O'Lakes, Inc. v. Spector Freight System, Inc.—4–71 Civ. 222;

Land O'Lakes, Inc. v. Rock Island Motor Transit Co.—4–71 Civ. 223;

Land O'Lakes, Inc. v. Raymond Motor Transportation, Inc.—4–71 Civ. 224;

Land O'Lakes, Inc. v. Murphy Freight Lines, Inc.—4–71 Civ. 225;

Land O'Lakes, Inc. v. Minnesota-Wisconsin Truck Lines, Inc.—4–71 Civ. 226;

Land O'Lakes, Inc. v. Mercury Motor-Freight Lines, Inc.—4–71 Civ. 227;

Land O'Lakes, Inc. v. Indianhead Truck Line, Inc.—4–71 Civ. 228;

Land O'Lakes, Inc. v. Hyman Freightways, Inc.—4–71 Civ. 229;

Land O'Lakes, Inc. v. Hart Motor Express, Inc.—4–71 Civ. 230;

Land O'Lakes, Inc. v. Glendenning Motorways, Inc.—4–71 Civ. 231;

Land O'Lakes, Inc. v. Gateway Transportation Co., Inc.—4–71 Civ. 232;

Land O'Lakes, Inc. v. C. W. Transport, Inc.—4–71 Civ. 233;

Land O'Lakes, Inc. v. Consolidated Freightways Corp. of Delaware—4–71 Civ. 234;

Land O'Lakes, Inc. v. Chippewa Motor Freight, Inc.—4–71 Civ. 235;

Land O'Lakes, Inc. v. Bruce Motor Freight, Inc.—4–71 Civ. 236;

Land O'Lakes, Inc. v. Briggs Transportation Co.—4–71 Civ. 237;

Land O'Lakes, Inc. v. Brady Motorfrate, Inc.—4–71 Civ. 238;

Land O'Lakes, Inc. v. Witte Transportation Co.—4–71 Civ. 240.

Doherty, Rumble & Butler by James F. McGovern, and Joseph R. Kernan, Jr., St. Paul, Minn., for plaintiff.

James L. Nelson, St. Paul, Minn., together with Jones, Meiklejohn, Kehl & Lyons, Denver, Colo., appeared for defendants.

NEVILLE, District Judge.

In Land O'Lakes, Inc. v. United-Buckingham Freight Lines, Inc., 351 F.Supp. 102 (D.Minn.1972), this court stated the facts of this controversy in some detail and held that the defendant motor carriers must refund an as yet undetermined amount of excess freight charges exacted from the plaintiff Land O'Lakes in connection with certain freight shipments.[1] The refunds in question when finally determined as to amount are to be ordered as a result of an Interstate Commerce Commission (ICC) proceeding. The court found the refund orders enforceable as agreed to by the carriers before the ICC as a reparation order under 49 U.S.C. § 304a and as an or-

---

1. Several "companion" cases have been transferred to this court by other Judges in the district because they involve virtually identical issues. The defendants are all represented by the same counsel. The plaintiff in Minnesota Mining and Manufacturing Co. v. Admiral-Merchants et al., 3–71–119 Civ., has retained Land O'Lakes' counsel for purposes of this proceeding and agreed orally at the December 27, 1972 hearing and by letter of counsel dated December 14, 1972 as follows:

> "3M and the Defendants in that case would stipulate that they would be bound by the determination of all legal issues in the Land O'Lakes case whenever and at whatever level of the appellate process those issues are finally resolved."

Counsel in American Crystal Sugar Co. v. Indianhead Truck Lines et al., 4–70 Civ. 226, similarly indicated a willingness to abide by the Land O'Lakes decision. Defense counsel has not sought to differentiate any of the above cases but does maintain that United States v. Admiral-Merchants et al., 4–71 Civ. 189, is distinguishable. The carriers appear to suggest that the ICC's position in Admiral-Merchants Motor Freight,

Inc. v. United States, 321 F.Supp. 353 (D.Colo.1971), aff'd, 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971), is inconsistent with the government's position in this proceeding, thereby precluding the government's action for refunds on some sort of an equitable estoppel basis. No *res judicata* or estoppel by judgment effect is claimed. See defendants' brief in reply to plaintiff's amended motion for summary judgment in United States v. Admiral Merchants, *supra*, at pp. 10–11. Assuming *arguendo* that such an inconsistency in position exists, the court finds no merit in the view that the government's action, *qua* shipper, in a separate action, is limited by the position advanced by the ICC in the Denver case. A contrary holding would lead to absurd results in the numerous situations in which the government, in different proceedings, is forced to act in its capacity as regulator and in its capacity as a consumer of goods and services. At least one court has allowed the United States to recover, and the court is not aware of any decisions to the contrary. See United States v. Burlington Truck Line, Inc., et al., 356 F.Supp. 582 (W.D.Mo., 1973).

der for the payment of money under 49 U.S.C. § 16(2), as incorporated into the Motor Carrier portion of the Interstate Commerce Act by 49 U.S.C. § 305(g). The court, however, was unable to determine the question of damages inasmuch as the parties had not fully presented their respective positions on that issue, though the parties have indicated likelihood they could stipulate as to the precise amount of damages once the court ruled on the four following questions [2]:

(1) Whether the defendant in each case is liable for all increases paid by the plaintiff to it during the refund period or only for those amounts which that particular defendant carrier retained and did not pay over to a connecting carrier as that carrier's share of the through transportation service provided?

(2) Whether defendant is liable for plaintiff's attorney's fees?

(3) Whether the presentation of claims by the shipper, supported by the actual submission of paid freight bills or other appropriate evidence, to the carriers, is or was a condition precedent to suit and recovery under the ICC orders of August 29, 1969 and October 27, 1969?

(4) Whether plaintiff is entitled to interest upon its claims and, if so, from what dates and at what interest rate?

Defendants also have moved the court to reconsider its earlier decision regarding liability in *Land O'Lakes, supra.* The court has examined carefully defendants' brief in support of its motion for reconsideration and finds that defendants have not set forth any arguments which were not previously before the court. The court already has detailed its views on the question of liability at length and continues to abide by those views for the reasons set forth in the earlier *Land O'Lakes* opinion. Defendants' motion for reconsideration is

therefore denied and the court will proceed to consider only the four above questions relating to damages and the means of calculating the same.

I.  *Liability for Through Shipments*

The defendant motor carriers in these actions resist payment for the full amount of the refunds in question, claiming that they are responsible only for those portions of the refunds which ultimately inured to them as shippers and not those amounts they paid over to connecting carriers. The shippers, of course, assert that the initiating carriers are jointly and severally liable for the refunds and refer the court to Louisville and N. R. Co. v. Sloss-Sheffield S. & I. Co., 269 U.S. 217, 46 S.Ct. 73, 70 L. Ed. 242 (1925). The *Sloss-Sheffield* case involved the enforcement of a reparation order and the defendants seek to distinguish it on that ground. The motor carriers further maintain that the ICC refund order does not provide expressly in what amounts and from whom the refunds are to be exacted, their tacit assumption apparently being that any ambiguity is to be construed against the shippers. At the same time the carriers argue that the order itself is vague, they assert that the ICC subsequently clarified the order's intent in the pleadings in Admiral-Merchants Motor Freight, Inc. v. United States, *supra.* The ICC allegedly conceived that case as restitution proceeding, and the carriers therefore maintain that the measure of unjust enrichment cannot exceed the amount retained by the defendant carriers.

The court is not about to relitigate the merits of the ICC order in a speculative effort to devine the ICC's "real" intent when quite clearly the connecting carrier issue was not contemplated by the order. This court previously determined that the refund order is valid and enforceable, both as a reparation order and as an order for the payment of money. In Louisville and N. R. Co. v. Sloss-

2.  Stipulation Between the Parties dated December 26, 28 and 29, 1972.

Sheffield S. & I. Co., *supra,* at 232, 46 S.Ct. at 78, the Supreme Court found in a reparation proceeding that:

> "The Commission held early, and has consistently held since, that carriers who by means of a joint through rate make excessive charges are liable jointly, and severally for all of the damages sustained." (Citations omitted).

This holding is in accord with general damages theory in which the tendency in a transaction is "not to go beyond the first step." See *e.g.,* Mr. Justice Holmes' statement Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918).

■ Whether the order is viewed as one for reparations or simply as an order for the payment of money, the court finds that the defendant motor carriers are jointly and severally liable for the full value of the individual shipments, notwithstanding the fact that portions of the shipping charges were forwarded to connecting carriers. To rule otherwise, the court would place an unreasonable burden on the shippers to determine who received the various portions of the charges and needlessly encourage additional litigation. The defendant motor carriers are in a far superior position to determine what carriers received the various portions of the refundable charges and if an action for contribution, indemnity or refund lies, to institute such.

## II. *Attorney's Fees*

■ Once the court has determined that the defendants are liable under 49 U.S.C. § 16(2), the plaintiff contends that an award of attorney's fees necessarily follows from the express provisions of the Interstate Commerce Act. 49 U.S.C. § 16(2) provides that " : . . . If the plaintiff shall finally prevail (in an action to enforce an order for the payment of money) he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." The plaintiff also points out that attorney's fees were awarded under

this rationale in Aluminum Co. of America v. Burlington Truck Lines, Inc., 342 F.Supp. 166 (N.D.Ill.1972). The defendants put forth an *expressio unius* argument, contending that the express provisions in 49 U.S.C. § 322 relating to the recovery of attorney's fees against motor carriers in certain types of actions precludes a Congressional intention to allow them in others. Moreover, the carriers assert that the policy of awarding attorney's fees, namely to encourage compliance with commission orders, would not be served here because of this order's unique and vague aspects.

Having decided in its prior order that § 16(2) of Part I of the Interstate Commerce Act is incorporated into Part II by 49 U.S.C. § 305(g), the court concurs with Judge Will's reasoning in the analogous cases of Aluminum Co. of America v. Burlington Truck Lines, Inc., *supra*; Aluminum Co. of America v. Admiral-Merchants, 70 Civ. 1189, at 3 (N.D.Ill. November 30, 1971). Accordingly, the court holds that plaintiff is entitled to reasonable attorney's fees under Section 16(2) of Part I of the Interstate Commerce Act, 49 U.S.C. § 16(2). The award of attorney's fees not only squares with the express language of the statute but also promotes the underlying legislative policy of encouraging compliance with ICC orders. The validity of the Commission orders on which these actions are based previously have been upheld by a three-judge court in Colorado and that decision has been affirmed by the United States Supreme Court. Admiral-Merchants Motor Freight, Inc. v. United States, 321 F.Supp. 353 (D. Colo.1971), aff'd, 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971). It could be argued that in the protracted litigation in this and other courts the defendants hope to make pursuing the refunds so expensive that the shippers will abandon their efforts and thereby allow the carriers to retain and enjoy the benefit of their excess charges. This, of course, is the very reason Congress provided for the allowance of attorney's fees in court actions against carriers for excess

charges made necessary by the carriers' refusal to comply with a Commission order. Evidence as to what constitutes reasonable attorney's fees will of course have to be produced for a determination as to the amount by the court.

### III. *Presentation of Documentary Evidence*

■ Defendants argue that as a condition precedent or as a "jurisdictional requisite" plaintiff was required particularly by the ICC order of August 29, 1969 to present documentary evidence of the excess charges in question to the carriers prior to the commencement of these actions. The carriers base their position on the language contained in the several Commission orders. Specifically, the carriers assert that the order of August 29, 1969 required the shippers to present "their claims to the carriers supported by paid freight bills or other appropriate evidence." The defendant carriers also refer to the ICC order of October 27, 1969 which states that the Commission "appropriately placed the burden for supporting claims for refunds upon the shippers who paid the charges." The plaintiff in *Land O'Lakes* contends that it notified the defendants of the basis and amounts of its claims prior to the commencement of these suits but insists that it would have been futile to undertake the time and expense to sort out the actual freight bills prior to the commencement of the actions. Plaintiff argues that the presentation of freight bills would have been a prerequisite only if there had been a reasonable expectation that the carriers would have paid the claims upon presentation, an expectation plaintiff maintains is clearly belied by the record. Moreover, Land O'Lakes states that it did in fact supply documentary evidence of its claims subsequent to the commencement of the action.

The court does not believe defendants' position has merit. The orders referring to placing the burden of supporting refund claims on the shippers do not detail the requisites of that burden. The August 29, 1969 order refers to documentation by "paid freight bills or *other appropriate* evidence (emphasis added)." Not only are the orders ambiguous as to the kind and quantity of documentary evidence necessary to sustain a claim, but the orders are equally silent as to when in the enforcement process such evidence must be presented. The court can find no basis for the carriers assertion that the presentation of detailed documentary evidence prior to the commencement of these actions rises to the level of a jurisdictional prerequisite or a condition precedent. Moreover, the carriers' manifest reluctance to make the refunds in question strongly suggests that the presentation of such evidence prior to the initiation of these cases would have been unavailing.

### IV. *Interest*

The court lastly must address itself to the question of interest. The plaintiff asserts that it is entitled to interest on the amount of its ultimate recovery from June 5, 1969, the date of the commission's first order, at a rate of 6% per annum. Judge Will so ruled in the analogous case of Aluminum Co. of American v. Burlington Truck Lines, Inc., *supra*. Plaintiff argues that this ruling should be followed to promote the ICC's policy of establishing cost conformity among competing carriers and further contends that this particular interest computation is necessary if it is to be compensated fully for its loss. The motor carriers assert that the awarding of interest as an element of damages is within the sound discretion of the Commission, that the Commission has not awarded interest in this case, and that for this court to do so would constitute judicial usurpation of the prerogatives of the ICC. Although the carriers appear to agree with the plaintiff that if interest is awarded it should run from the date of the Commission refund order,[3] they maintain that in any event

---

3. Defendants' Brief on Stipulated Legal Issues at p. 11.

no higher a rate than 4% per annum should be applied. They assert that this is the rate which is applied by the Commission and that to apply a different rate would result in "discrimination between shippers" and thereby defeat a primary regulatory policy of the ICC.

■ It is the court's view that interest should be awarded at an annual rate of 6% per annum from June 5, 1969, the date of the Commission's initial refund order. The court is aware that there is some authority which indicates that the *Commission* generally applies a 4% rate in reparation proceedings. *See e.g.* Marion Power Shovel Co. v. Penna. R.R., 305 I.C.C. 465, 470 (1958); United States v. Burlington Truck Line, Inc., 356 F.Supp. 582 (W.D. Mo.1973), where 4% was all that plaintiff requested. There is also authority, however, for the proposition that courts have the discretionary power to award interest in an action to enforce a Commission order. *See* City of Danville v. Chesapeake & O. Ry. Co., 34 F.Supp. 620 (W.D. Va.1940); *cf.* Pennsylvania R. Co. v. Minds, 250 U.S. 368, 39 S.Ct. 531, 63 L.Ed. 1039 (1919). Exercise of the court's discretion would seem especially appropriate in view of the admittedly unique aspects of the refund orders here in question. Moreover, the court's ruling is consistent with the result reached in Aluminum Co. of America v. Burlington Truck Lines, Inc., *supra*. Therefore, the argument in favor of non-discrimination among competing carriers, which defendants advance in support of a 4% rate, militates in favor of a 6% rate in these actions. This result is also consonant with the underlying Congressional policy of 49 U.S.C. § 16(2) which is to encourage prompt payment of money ordered by the Commission to be paid.[4] If interest accruing from the date of an ignored Commission order were to be denied, the carriers would have the use of the shipper's money for as long as they could delay or contest the Commission's

order, thereby discouraging prompt compliance with ICC orders in direct contradiction of Congressional policy. And as Judge Will pointed out in Aluminum Co. of America v. Burlington Truck Lines, Inc., *supra*, 342 F.Supp. at 177 ". . . without such interest award, there is no way that the shippers could be made whole after the carriers herein have reneged on their agreement to roll back the unapproved portion of the increased tariffs collected."

It is the court's hope that with the guidelines hereinabove, counsel for the parties will be able to meet and stipulate (without defendants thereby admitting the correctness of the court's determination if an appeal is contemplated) as to the amounts for which judgment can be entered against each defendant, leaving possibly and if not stipulated, only the question of reasonable attorney's fees for the court's determination.

A separate order has been entered.

---

4. Interstate Commerce Commission v. Atlantic Coast Line R. Co., 383 U.S. 576, 595, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1969).