WESTERN ELECTRIC COMPANY, INC., Appellee,

v.

BURLINGTON TRUCK LINES, INC., et al., Appellants.

The PROCTOR & GAMBLE DISTRIBUTING CO. et al., Appellees,

v.

IDEAL TRUCK LINES, INC., et al., Appellants.

UNITED STATES of America, Appellee,

v.

BURLINGTON TRUCK LINE, INC., et al., Appellants.

Nos. 73–1200 to 73–1202.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1974.

Decided July 29, 1974.

· Arthur R. Hauver, Denver, Colo., for appellants.

Edwin E. Huddleson, Atty., Dept. of Justice, Appellate Section, Washington, D. C., for United States.

Robert B. Ward, Cedar Rapids, Iowa, for Amana.

John C. Noonan, Kansas City, Mo., for Western Electric.

James F. McGovern, St. Paul, Minn., for Land O'Lakes.

Don M. Jackson, Kansas City, Mo., for Proctor & Gamble.

Before HEANEY and BRIGHT, Circuit Judges, and WANGELIN, District Judge.*

HEANEY, Circuit Judge.

These are consolidated appeals by the defendant motor carriers from judgments entered after trial in favor of the plaintiff shippers. The actions filed by the shippers in the District Court were maintained to enforce an Interstate Commerce Commission refund order.[1]

In March of 1968, the Middlewest Motor Freight Bureau, a tariff publishing agent for motor carriers in the middlewest territory, filed a schedule of rate increases with the I.C.C. These rate increases were to take effect on April 1, 1968. Although the I.C.C. did not suspend the operation of the schedule, it instituted an investigation of the lawfulness of the rates because of protests by various parties.

The Commission ordered that certain evidence be filed, and set a hearing date of May 20, 1968. On April 12, 1968, the General Services Administration and the Department of Transportation requested a 90-day extension for submission of the required evidence. On April 22, 1968, the Middlewest Bureau sought a like postponement for "the reason . . . that it [was] a physical impossibility for the respondents to compile the required data within the time allowed by the order . . .". On April 25,

1968, the Commission granted the extension in an order which read in part:

It is further ordered, That the time for filing the requested information and supporting data be, and, it is hereby extended to August 5, 1968; that the hearing be, and it is hereby postponed to August 19, 1968, conditioned upon respondents' compliance with the refund provision ordered below * * *.

And it is further ordered, That respondents be, and they are hereby, ordered to make refunds to the shippers on any shipment moving after May 20, 1968, to the extent that the increases or any portion thereof under investigation herein are not approved by the Commission.

Increased Rates and Charges, From, To and Between Middlewest Territory, I.C. C. No. 34971 (Order of April 25, 1968). The Bureau petitioned for reconsideration of the refund requirement. It withdrew the petition when it learned that in other similar proceedings the Commission had, at the request of other carriers, vacated a refund order but reinstated the original hearing date.

The hearing was held on August 19, 1968. The Commission found, on June 5, 1969, that the proposed increases had not been shown to be just and reasonable,[2] and it ordered:

* * * That, in accordance with the order entered herein on April 25, 1968, the respondents be, and they are

---

* II. KENNETH WANGELIN, District Judge, Eastern District of Missouri, sitting by designation.

1. In case No. 73–1201, jurisdiction was asserted under 28 U.S.C. § 1336. In case No. 73–1202, jurisdiction was asserted under 28 U.S.C. § 1337. In case No. 73–1200, jurisdiction was asserted under 28 U.S.C. § 1345. Similar actions were filed in various jurisdictions including the Northern District of Iowa and the District of Minnesota. Cases appealed from those districts and decided by this Court in other opinions filed today are: No. 73–1507, Amana Refrigeration, Inc. v. A. W. Schmidt Transfer; No. 73–1508, Amana Refrigeration, Inc. v. Bruce Motor Freight,

Inc.; No. 73–1509, Penick & Ford, Ltd. v. Admiral-Merchants Motor Freight, Inc.; No. 73–1510, LeFebure Corporation v. Bruce Motor Freight, Inc.; No. 73–1683, Penick & Ford, Ltd. v. Pacific Intermountain Express Co.; No. 73–1580, American Crystal Sugar Co. v. Indianhead Truck Lines; No. 73–1581, Land O'Lakes, Inc. v. United-Buckingham Freight Lines, Inc.; No. 73–1670, United States of America v. Admiral-Merchants Motor Freight, Inc.; and No. 73–1682, Container Corporation of America & Montgomery Ward & Co., Inc. v. Hart Motor Express, Inc.

2. The carriers do not challenge that finding here.

hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases herein found not shown to be just and reasonable.

Increased Rates and Charges, From, To and Between Middlewest Territory, No. 34971, 335 I.C.C. 142, 151 (June 5, 1969).

The carriers petitioned the Commission to reconsider the refund order or reopen the proceedings for further hearing. They also cancelled the disputed increases on statutory notice, effective August 31, 1969, and filed new rate schedules to become effective September 1, 1969. The schedules filed called for rates higher than those filed in March, 1968. The Commission entered an order on August 29, 1969, declining to suspend or investigate the new increases. It also denied the carriers' petition to reconsider the refund order. It ordered the carriers, in accordance with its decision of June 5, 1969, to:

> * * * make refunds to the shippers presenting their claims to the carriers supported by paid freight bills or other appropriate evidence.

Increased Rates and Charges, From, To and Between Middlewest Territory, I.C. C. No. 34971 (Order of August 29, 1969).

On October 27, 1969, the Commission denied an October 9, 1969, petition for reconsideration of the June 5, 1969, decision as affirmed on August 29, 1969.

On January 26, 1970, sixty of the approximately 1,100 carriers filed a complaint in the United States District Court for the District of Colorado. They asked that a three-judge court be convened pursuant to 28 U.S.C. §§ 2284 and 2321–2325. They sought a declaration that the Commission's refund orders were beyond the statutory authority and jurisdiction of the Commission and an injunction against enforcement of the refund requirement. On June 19, 1970, the Colorado District Court issued

an order temporarily restraining the I. C.C. from effectuating its refund order. On November 6, 1970, the three-judge court issued a preliminary injunction to the same effect.

In a memorandum opinion and order filed on January 14, 1971, the three-judge court dismissed the carriers' complaint finding that:

> We are unable in good conscience, in view of the circumstances presented, to annul the order of the Commission. The Commission was acting in good faith in granting the extension, and the carriers were at the time agreeable to acceptance of the benefits of such an extension order. Their present posture appears to us to be grossly inequitable and not deserving of court intervention. While we do not commend the procedure as one which should be or could be practiced, we do hold that the peculiar facts of this case, arising as they did, are such as to not justify the granting of the relief requested, namely annulment of the Commission's order and approval of the carriers' conduct.

Admiral-Merchants Motor Freight, Inc. v. United States, 321 F.Supp. 353, 360 (D.Colo.1971).

The three-judge court entered judgment against the carriers on February 4, 1971, and vacated the injunction. The United States Supreme Court affirmed the judgment without an opinion on October 12, 1971, 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37.

The appellee-shippers then filed suit in the District Court for the Western District of Missouri seeking enforcement of the Commission's refund order. The District Court entered judgment for the shippers in each case before it. It wrote its principal opinion in case No. 73–1201, Proctor and Gamble Co. v. Byers Transportation Co., Inc., 355 F. Supp. 547 (W.D.Mo.1973). It held: (1) that the carriers were precluded because of the decision in *Admiral-Merchants* from challenging the validity of the re-

fund order under the principle of res judicata and its related concepts; (2) that the Commission's order was an order for the payment of money and, thus, enforceable under 49 U.S.C. § 16(2); (3) that the shippers were not barred from recovering damages because of the applicable statute of limitations; and (4) that the shippers were entitled to damages, interest and attorneys' fees. The carriers question the court's decision on each point.

### EFFECT OF ADMIRAL-MERCHANTS

The District Court found that all carriers before it were either parties to or privy to parties in the three-judge court action and were bound by the latter court's decision. The carriers do not challenge the court's finding on privity. They do contend, however: (1) that the validity of the Commission's order was not decided by the three-judge court and was subject to attack in the court below; and (2) that the Commission's order is confiscatory and should not be enforced for that reason.

The Seventh Circuit, in discussing the first issue in a case similar to this one stated:

> * * * The assertion of this argument requires, as the court below concluded, a "myopic reading of the opinion" of the Colorado three-judge court. * * * The statement of issues given by the three-judge panel negates any argument that the court was not concerned with the validity of the Commission's refund order:
> * * *

Aluminum Co. of Amer. v. Admiral Merchants M. Frgt., Inc., 486 F.2d 717, 720 (7th Cir.), cert. denied, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973).

An examination of the three-judge court's statement of the issues before it leads us to agree with the Seventh Circuit:

> We must decide whether an order of the Commission in which a rate increase is denied, which order directs repayment of interim rates, if determined to be invalid, and which refund order was entered by the Commission as a condition of granting an extension of time to the carriers at their request, is invalid and subject to a judgment annulling the same. We are not involved with the Commission's order denying the increase. We are limited to the propriety and validity of a conditional rate refund order, which order was tacitly or impliedly (by withdrawals of objection) accepted by the carriers, plaintiffs herein.

Admiral-Merchants Motor Freight, Inc. v. United States, *supra*, 321 F.Supp. at 358.

As the validity of the Commission's order was determined by the three-judge court, the doctrine of *collateral estoppel* was applicable and the appellees could not reassert its invalidity in the court below. *See*, 1B J. Moore, Federal Practice ¶¶ 0.410, 0.441 and 0.443 (2d ed. 1965). *Accord*, S. S. Kresge Company v. A & B Transfer, Inc., 488 F.2d 894 (6th Cir. 1973), cert. denied, 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974); Aluminum Co. of Amer. v. Admiral Merchants M. Frgt., Inc., *supra*.

The carriers' second contention is that enforcement of the refund order will result in the confiscation of their property without due process. They argue that they have never had an opportunity to present evidence on this issue to the Commission or to a federal court,[3] and that the due process requirements of the Constitution require that they be given such an opportunity. The District Court viewed this contention as an additional attack upon the validity of

---

3. The carriers attempt to present the confiscation issue to the Commission when they submitted their petition to reopen the proceedings for further hearing was rejected. In *Admiral-Merchants*, the carriers asked the three-judge court to remand the issue to the Commission for an initial determination. The three-judge court did not grant the request. The same request was made of the Supreme Court.

the order and held that the three-judge court decision in *Admiral-Merchants* precluded such an attack. We agree with District Court's characterization of the attack. This is not to say that we necessarily agree that the three-judge court properly decided the issue by dismissing the complaint without granting the requested relief, but only that the carriers were precluded from raising the issue in the court below because of the three-judge court's decision and the Supreme Court's affirmance of it.

The carriers suggest alternatively that they are not attacking the validity of the order but are simply arguing that even if the order is valid, enforcement of it results in their property being taken without due process and that the courts should give them a hearing on this issue. The answer to this suggestion is the same. They raised the issue before the three-judge court and the Supreme Court, and were denied relief by both.

At oral argument, the carriers argued that public policy requires that we abrogate the carriers' obligation to pay the refunds—the theory being that if the carriers were required to pay the funds, many of them would be bankrupted and the flow of goods throughout the United States would be slowed. To the extent that this concern is a valid one, it can be recognized by the Commission in a future proceeding.

## ENFORCEMENT OF THE REFUND ORDER

Although the Interstate Commerce Act originally established a scheme for the regulation of railroads, the Act was amended in 1935 to give the Commission the additional authority to regulate motor carriers. 49 Stat. 543. The sections regulating railroads were designated Part I (49 U.S.C. § 1 et seq.), and the sections regulating motor carriers were designated Part II (49 U.S.C. § 301 et seq.). Part I of the Act provides two methods by which shippers may recover damages against railroads in post-shipment litigation. Section 15(7) [49 U.S.C. § 15(7)] provides for refunds, and §§ 13 and 16 [49 U.S.C. §§ 13 & 16] provide for reparations.[4] Part II does not contain refund provisions. However, in response to T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959),[5] a reparations section was added in 1965.[6]

The carriers contend that § 16(2) "creates a cause of action to enforce a railroad reparations order and for recovery of damages thereunder, only."

The District Court held that:

\* \* \* For the reasons enunciated in Aluminum Company of America v.

---

4. A succinct discussion of the difference between refunds and reparations is found in S. S. Kresge Company v. A &. B Transfer, Inc., 488 F.2d 894, 897 n. 1 (6th Cir. 1973) (dissenting opinion), cert. denied, 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974) :

"Refunds" and "reparations", as they are used in the Interstate Commerce Act, are words of art. Under § 15(7), 49 U.S.C. § 15(7) the Commission may require a carrier which has increased its rates to keep accurate accounts of "all amounts received by reason of such increase." After the hearing the Commission may order the carrier "to *refund*, with interest, to the persons in whose behalf such amounts were paid, such portion of the increased rates or charges as by its decision shall be found not justified." [Emphasis included.]

Under the reparations procedure any aggrieved party may make a complaint to the ICC "of anything done or omitted to be done by any common carrier subject to the provisions of this chapter . . .." 49 U.S.C. § 13(1). The Commission may then investigate and, if it finds a violation by the carrier, it will "make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named." 49 U.S.C. § 16(1). There are a number of illegal activities that will give rise to a complaint for reparations, including: unreasonable charges, Lewis-Simas-Jones Co. v. Southern Pac. Co., 283 U.S. 654, 51 S.Ct. 592, 75 L.Ed. 1333 (1931), and discrimination by a carrier against or in favor of certain shippers, Pennsylvania R. Co. v. Weber, 257 U.S. 85, 42 S.Ct. 18, 66 L.Ed. 141 (1921).

5. Discussed *infra.*

6. Interstate Commerce Act § 204a, 79 Stat. 651, 49 U.S.C. § 304a.

Admiral-Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill.1972) and Aluminum Company of America v. Burlington Truck Lines, 342 F. Supp. 166 (N.D.Ill.1972), the Court finds that Section 16(2) does provide a statutory cause of action to the plaintiff under the facts presented.[7] 355 F.Supp. at 561.

The cases cited by the District Court held that § 16(2)[8] of Part I of the Interstate Commerce Act, was incorporated into § 205(g)[9] of Part II of the Act, thus providing the shippers a statutory remedy for enforcement of the Commission refund order. We agree.[10]

■ We read § 205(g) as providing that shippers by motor carrier shall have the same right of relief with respect to final orders of the Commission as do shippers by rail, and read the phrase "right of relief" as encompassing the right to bring an action. As §

16(2) gives shippers by rail a right to bring an action to require carriers to comply with an order for the payment of money in federal District Court, shippers by motor carrier have the same right.

The carriers assert that "[u]nless *T.I.M.E.* is to be disregarded entirely, plaintiffs have no cause of action under § 16 against motor carriers." In *T.I.M.E.*, a shipper challenged the reasonableness of motor carriers' charges although they were in accordance with the published tariffs. The shipper contended that Part II of the Act creates a judicially enforceable right to recover unreasonable charges and that the Act preserves the common law right of a shipper by common carrier to recover exorbitant rates. The Supreme Court rejected both contentions. As to the first contention, the Court stated:

> The very provisions of Part I, and their counterparts in Part III, which

---

7. The District Court also found that "* * * plaintiffs could succeed under the facts on the theory of restitution * * *". Proctor and Gamble Co. v. Byers Transportation Co., Inc., 355 F.Supp. 547, 562 n. 30 (W.D.Mo.1973).

8. 49 U.S.C. § 16(2) provides:

(2) If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any State court of general jurisdiction having jurisdiction of the parties, a complaint setting forth briefly the causes for which he claims damages, and the order of the Commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated, and except that the plaintiff shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the plaintiff shall finally prevail he shall be allowed a

reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit.

9. 49 U.S.C. § 305(g) provides:

(g) Any final order made under this chapter shall be subject to the same right of relief in court by any party in interest as is now provided in respect to orders of the Commission made under chapter 1 of this title: *Provided*, That where the Commission, in respect of any matter arising under this chapter, shall have issued a negative order solely because of a supposed lack of power, any such party in interest may file a bill of complaint with the appropriate District Court of the United States, convened under section 2284 of Title 28, and such court, if it determines that the Commission has such power, may enforce by writ of mandatory injunction the Commission's taking of jurisdiction.

10. Although § 16(2) is part of the reparations scheme of Part I of the Act, the language found therein is broad enough to encompass an action to enforce the instant refund order. The Sixth and Seventh Circuits have also decided this issue in favor of the shippers. S. S. Kresge Company v. A & B Transfer, Inc., *supra*; Aluminum Co. of Amer. v. Admiral Merchants M. Frgt., Inc., 486 F.2d 717 (7th Cir.), cert. denied, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973).

give a right of action to shippers against carriers for damages incurred by carrier violations of the Act and provide the mechanics for the enforcement of that right are conspicuously absent in the Motor Carrier Act. Thus, whereas § 8 of Part I provides that "any common carrier subject to the provisions of this chapter (who) shall do . . . any act . . . in this chapter . . . declared to be unlawful . . . shall be liable to the person or persons injured thereby for the full amount of the damages sustained . . .," Part II has no comparable provision. Again, whereas § 9 of Part I gives an injured shipper the right to sue in the I.C.C. or in the Federal District Court, Part II contains no comparable provision. In addition, §§ 13(1) and 16 of Part I give a shipper claiming reparation the right to proceed in the Commission and to enforce his reparation award in the courts, and Part II contains no comparable provisions.

T.I.M.E., Inc. v. United States, *supra*, 359 U.S. at 470–471, 79 S.Ct. at 908.

The dissenting judge in S. S. Kresge v. A & B Transfer, Inc., *supra*, 488 F.2d at 899, concluded:

> The import of *T.I.M.E.* to the present case is apparent. The Supreme Court found that the remedies available to shippers by rail under § 16(2) were not present in the Motor Carrier Act. Consequently, any suggestion that § 16(2) is incorporated into Part II must fail unless, subsequent to the decision, Congress has provided for such incorporation.

However, in Aluminum Co. of Amer. v. Admiral Merchants M. Frgt., Inc., *supra*, 486 F.2d at 722, the Seventh Circuit ruled that:

> * * * [t]he *T.I.M.E.* decision is clearly distinguishable since it involved the shippers' right to reparations not their right to enforce a valid refund order. As stated by Judge Will in the court below, "in no sense did the *T.I.M.E.* decision consider the issue of whether, when the Commission does issue a valid refund order under Part II, the shippers for whose benefit the order was issued can proceed under Section 16(2) of Part I." Admittedly, there is a dearth of legislative history and/or cases to which the court might look for assistance in interpreting § 305(g). Nevertheless, the plain language of the statute provides ample basis for the district court's conclusion that the statute incorporates § 16(2) of Part I: * * *

We agree with the Seventh Circuit's interpretation of *T.I.M.E.*

The carriers also argue that conditions precedent to the maintenance of an action under § 16(2) are not present here. We simply quote from Aluminum Co. of Amer. v. Admiral Merchants M. Frgt., Inc., *supra* at 724.

> We remind defendants that we are concerned with plaintiff's "right of relief," i. e., its right to enforcement of the refund order, and not its compliance with technical requirements of questionable applicability. * * * Having accepted the benefits afforded by the continuance of the rate hearing, defendants should now be required to provide the agreed-upon exchange—the *quid pro quo*.

## STATUTE OF LIMITATIONS

■ The court below held that the applicable statute of limitations, 49 U.S. C. § 16(3)(f), was tolled from June 19, 1970, the date the Commission's refund order was restrained by the three-judge court, until February 4, 1971, the date final judgment was entered in *Admiral-Merchants* and the preliminary injunction was vacated. It found that the Commission's June 5, 1969, refund order did not become final until October 27, 1969; and because the complaint in this case was filed on November 12, 1970, it was filed within the one-year limitation period. We affirm. During the period that enforcement of the Commission's refund order was enjoined, " * * * there was not an effective order upon

which the statute of limitations could run." 355 F.Supp. at 562.

## INTEREST AND ATTORNEYS' FEES

■ We agree with the District Court that interest on refunds should run from August 12, 1970, the date of the shippers' demand on the carriers.[11] We hold that the rate of interest should be set at four percent in all cases on appeal in this Circuit as a result of the Commission's June 5, 1969, refund order.[12] This interest rate will be consistent with that generally set by the Commission, *see, e. g.*, Marion Power Shovel Co. v. Penna. R.R., 305 I.C.C. 465, 470 (1958), and will tend to promote nondiscrimination among competing carriers.

■ The District Court did not err in awarding attorneys' fees to the shippers pursuant to 49 U.S.C. § 16(2). *See* n. 8 *supra.*

We turn to No. 73–1202, United States v. Burlington Truck Line, Inc., 356 F.Supp. 582 (W.D.Mo.1973), in which the District Court entered judgment for the shipper after trial. The issues in this case are virtually identical to those in *Proctor and Gamble*. With the exception of the following, the issues raised in this case are governed by our conclusions in *Proctor and Gamble*:

■ (1) The District Court's application of the three-year statute of limitations, 49 U.S.C. § 16(3)(i),[13] to the cause of action of the United States did not constitute error; and

(2) the District Court did not err in awarding interest from May 4, 1971 (the date of the filing of the complaint), because no evidence of a demand by the shipper was presented. *See* n.11 *supra.*

Finally, in No. 73–1200, Western Electric Co., Inc. v. Burlington Truck Lines, Civil No. 18471–4 (W.D.Mo. March 6, 1973), the District Court entered judgment for the shipper after a trial upon stipulated facts. This case is also governed by our conclusions in *Proctor and Gamble*. In addition:

(1) the District Court was correct in holding that the statute of limitations, 49 U.S.C. § 16(3)(f), did not begin to run until October 27, 1969, the date that the Commission's June 5, 1969, order became final; and

(2) the District Court did not err in awarding interest from June 25, 1970, the date Western Electric filed its complaint. *See* n.11 *supra.*

Costs on appeal shall be taxed to the appellants.

Affirmed with modifications and remanded for action consistent with this opinion.

---

11. The demand date is significant because the Commission's August 29, 1969, order directed the carriers to " * * * make refunds to shippers *presenting their claims to the carriers.* * * * ". (Emphasis added.) Increased Rates and Charges, From, To and Between Middlewest Territory, I.C.C. No. 34971 (Order of August 29, 1969).

12. In *Proctor and Gamble* and in Western Electric Co., Inc. v. Burlington Truck Lines, Civil No. 18471–4 (W.D.Mo. March 6, 1973), the court set the interest rate at six percent per annum, and in United States v. Burling-

ton Truck Line, Inc., 356 F.Supp. 582 (W.D.Mo.1973), the court set the rate at four percent per annum.

13. 49 U.S.C. § 16(3)(i) provides in part:
 * * * That with respect to such transportation of property or passengers for or on behalf of the United States, the periods of limitation herein provided shall be extended to include three years from the date of (A) payment of charges for the transportation involved, or (B) subsequent refund for overpayment of such charges, or (C) deduction made under section 66 of this title, whichever is later.